WILLIAM L. DETWILER ET AL., APPELLEES, V. MATILDA DETWILER ET AL., APPELLANTS.

[FILED SEPTEMBER 18, 1890.]

Resulting Trusts: FRAUDULENT CONVEYANCES. J. B. D. bought certain city lots, paying for them with his own means, and by his direction the deed therefor was made by the vendor and grantors to M. A. D., mother of J. B. D. Held, That a trust in said lots resulted in favor of J. B. D. But if the title was thus directed to be made to M. A. D. for the purpose and intention of defrauding the creditors of J. B. D., he, being insolvent and contemplating bankruptcy, could not enforce such trust by action, but the legal title afterwards acquired by him was received free of any equitable claim of other heirs of M. A. D., she being deceased.

APPEAL from the district court for Douglas county. Heard below before WAKELEY, J.

Bartlett & Cornish, and Savage, Morris & Davis, for appellants, cited: Pom., Eq. Jur., vol. I, secs. 401-4, vol. II, secs. 19, 418, 419, 609, 610, 649, 664, 687, 818; Bleakley's App., 66 Pa. St., 187; Van Cott v. Prentice, 10 N. E. Rep. [N. Y.], 257; Rapalje & Lawrence's Law Dic., 268; Herman, Estoppel, 1216, sec. 1085; Goodspeed v. Fuller, 46 Me., 141; Draper v. Shoot, 25 Mo., 197 [69 Am. Dec., 462]; Hammond v. Woodman, 41 Me., 177 [66 Am. Dec., 219]; Bobb v. Bobb, 4 S. W. Rep. [Mo.], 511; Parker v. Kuhn, 21 Neb., 425-26; 1 Washburn, R. P. [4th Ed.], ch. 2; 3

Wait's Act. & Def., secs. 99, 102; 6 Id., secs. 2, 10; *Turner v. Hall*, 60 Mo., 271; *Putnam Free Sch. v. Fisher*, 34 Me., 172; *Sch. Dist. v. Benson*, 31 Me., 381 [52 Am. Dec., 218]; *Brandt v. Ogden*, 1 Johns. [N. Y.], 156; *Jackson v. Parker*, 9 Cow. [N. Y.,] 74; *Kirke v. Smith*, 9 Wheat. [U. S.], 241; *Fugat v. Pierce*, 49 Mo., 441; *Ewing v. Burnett*, 11 Peters [U. S.], 41.

*George W. Covell*, and *E. H. Wooley*, contra, cited: *Cutler v. Tuttle*, 4 C. E. Gr. [N. J.], 549; *Shroser v. Isaacs*, 1 Stew. [N. J. Eq.], 320; *Slocum v. Marshall*, 2 Wash. C. C., 397; *Newton v. Preston*, Pr. Ch. [Eng.], 103; *Wright v. King*, Harr. Ch. [Del.], 12; *Enos v. Hunter*, 4 Gilm. [Ill.], 211; *O'Hara v. O'Neil*, 2 Eq. Cas., Ab. [Eng.], 745; *Cottington v. Fletcher*, 2 Atk. [Eng.], 155; *Ambrose v. Ambrose*, 1 Cox P. Wm. [Eng.], 321; *Bolt v. Rogers*, 3 Paige [N. Y.], 156; *Starkes v. Littlepage*, 4 Rand. [Va.], 372; *Hershey v. Weiting*, 14 Wright [Pa. St.], 244; *Freeman v. Sedwick*, 6 Gill [Md.], 28, 39; *Stewart v. Iglehart*, 7 Gill & J. [Id.], 132; Rapalje & Lawrence, Law Dic., 96–7; *Hall v. Sawyer*, 47 Barb. [N. Y.], 119; Story, Agency, secs. 3, 25, 126 (and note 3), 133 (and notes 1 and 2); Perry, Trusts, secs. 1, 783; *Dupont v. Wertheman*, 10 Cal., 354; *Mott v. Smith*, 16 Id., 536–557; *Blum v. Robertson*, 24 Id., 140; *Mch. Bk. v. Bk. of Columbia* 18 U. S., 326; *Beals v. Allen*, 18 Johns. [N.Y.], 363; *Hubbard v. Elmer*, 7 Wend. [N. Y.], 446; *Rossiter v. Rossiter*, 8 Id., 494; *North River Bank v. Aymar*, 3 Hill [N. Y.], 263; *Cox v. Robinson*, 2 Stew. & Porter [Ala.], 91; *Stow v. Wyse*, 7 Conn., 214; *Ins. Co. v. Poe*, 53 Md., 28 [13 Am. Law Reg., 663]; *Mechanics Bk. v. Schaumburg*, 38 Mo. 228; *Nesbitt v. Helser*, 49 Id., 383; *Sanford v. Handy*, 23 Wend. [N. Y.], 260; *Brantly v. S. Life Ins. Co.*, 53 Ala., 554; *Wickham v. Knox*, 33 Pa. St., 71; *Watson v. Hopkins*, 27 Tex., 637; *Thurman v. Wells-Fargo Ex. Co.*, 18 Barb. [N. Y.], 500; *Holtsinger v. Corn Ex.*

*Bk.*, 6 Abb. Pr. [N. S.], 292; *Spadone v. Manvel*, 2 Daly [N. Y.], 263; *Clark v. Meigs*, 10 Bosw. [N. Y.], 337; *Munn v. Com. Co.*, 15 Johns. [N. Y.], 44; *Davenport v. Buckland*, Hill & D. [N. Y.], 75; *Fellows v. Northrup*, 39 N. Y., 117; *Cuyler v. Merrifield*, 5 Hun [N. Y.], 559; *Hetzel v. Barber* 69 Barb. [N.Y.], 1; *Hoyt v. Hoyt*, 17 Hun. [N. Y.], 192; *Nixon v. Hyserott*, 5 Johns. [N. Y.], 58; *Allen v. De Witt*, 3 N. Y., 276; *Dunshen v. Goldbacher*, 56 Barb. [N. Y.], 579; *Haywood v. Thomas*, 17 Neb., 237, 241; *Gatling v. Lane*, 17 Id., 77; *Jackson v. Woodruff*, 1 Cowen [N. Y.], 276; *Jackson v. Luquere*, 5 Id., 221; *Hull v. C., B. & Q. R. Co.*, 21 Neb., 373; *Bailey v. Irby*, 2 Nott & McCord [S. Car.], 343; *Union Canal Co. v. Young*, 1 Whart. [Pa.], 426; *Parker v. Kuhn*, 21 Neb., 413.

COBB, CH. J.

The plaintiffs and appellees in this cause exhibited their bill, in the court below, against the appellants, for the purpose of setting aside a deed executed by William H. Detwiler, as attorney in fact of plaintiffs, to John B. Detwiler, of lots 3 and 4 of block 256, in the city of Omaha, on the ground of fraud, and to establish the plaintiffs' rights as heirs of Mary A. Detwiler, deceased, to said lots.

The plaintiffs set up that William L. Detwiler, Mary Jane Parkins, and Josephine Clinton were the children and heirs of Mary A. Detwiler, deceased; that Joseph F. Parkins was the husband of Mary Jane; that Fred. Clinton was the husband of Josephine, and that they were the only heirs of said Mary A. Detwiler, except Emma De-Lora Gallagher and John B. Detwiler, deceased; that said Emma and her husband, John Gallagher, were made defendants to the suit because they refused to join as plaintiffs; that Matilda A. Detwiler was the widow of John B., deceased, and that Augustus K., Caroline, and Grace Det-

wiler were his children and only heirs at law. The relationship of the parties to the suit appears in the following table:

PARENTS : { William H. Detwiler and Mary A. Detwiler.

CHILDREN : { John B. Detwiler, deceased. William L. Detwiler, plaintiff. Mary Jane Parkins, plaintiff. Josephine Clinton, plaintiff. Emma DeLora Gallagher, defendant.

PARENTS : { John B. Detwiler, deceased, and Matilda A. Detwiler, defendant.

CHILDREN : { Augustus K. Detwiler, defendant. Caroline Detwiler, defendant. Grace Detwiler, defendant.

HUSBANDS OF PLAINTIFFS : { Joseph F. Parkins, plaintiff, and Fred. Clinton, plaintiff.

The plaintiffs set up that Mary A. Detwiler died intestate in the year 1874, seized in fee simple of said lots; that in said year John B. Detwiler procured the title by fraud; that his deed was executed by William H. Detwiler without authority of the plaintiffs or any of them; that they never discovered that fact until within the year prior to the commencement of this suit; that no consideration was paid by said John B. to William H. Detwiler, or to any of the plaintiffs, or to the grantors in said deed, and that said William H. had no knowledge that he was signing a deed to said lots; that his signature was procured by said John B. by false and fraudulent representations that the said instrument was a power of attorney or other instrument necessary in some business transaction, and which the said William H. supposed he was signing as an instrument other than and different from a warranty deed of said premises; that he did not discover that he

had made said deed until within the year prior to the commencement of this suit, and that he signed the same relying upon the representations of said John B. Detwiler; and praying that the court decree the plaintiffs each one-fifth interest in said real estate.

The defendants answered, denying that Mary A. Detwiler owned said real estate, and setting up that the same was purchased by John B. Detwiler, in his lifetime, and conveyed to said Mary A. in trust for the benefit of said John B. and his heirs, all of which was known to the plaintiffs at the time of said Mary A.'s death, and alleging that said Mary A. held the title to said lots in trust for the use and benefit of John B. Detwiler and his heirs, and that Mary A., after receiving said conveyance, agreed to execute the trust by reconveying the lots to John B. and his heirs, and before the execution thereof, in the year 1874, the said Mary A. died suddenly, leaving the legal title in her, and that, for the purpose of executing said trust, the plaintiffs, in 1874, executed to said William H. Detwiler, their father, the husband of Mary A., deceased, a power of attorney, authorizing him to make the conveyance, which is claimed by them to have been procured by fraud; that by virtue of said power of attorney, and with their full knowledge, the property was conveyed to John B. Detwiler by William H. Detwiler on October 7, 1874.

The answer further sets up that the claim of the plaintiffs is for the purpose of defrauding the said Matilda A. Detwiler and her children out of their title to said real estate; and further interposes the statute of limitations.

The plaintiffs replied, alleging that the said property was purchased by said John B. Detwiler, as agent of said Mary A. Detwiler.

Upon the argument and hearing of this cause it was referred by the court to A. N. Ferguson, Esq., to take testimony and report what sums have been paid by J. B. Detwiler in his lifetime, or by his heirs or legal represen-

tatives since his death, for taxes or assessments on lots 3 and 4, in block 256, in Omaha, or improvements thereon, or pertaining thereto, and the amount, with legal interest; by which it was found that the sum of $717.84 had been so taxed, assessed, and paid.

Subsequently, on March 28, 1888, the cause which was tried to the court at the September term, 1887, and taken under advisement, came on to be decided and was found generally, upon pleadings and evidence, in favor of the plaintiffs; and it was further specially found that Mary A. Detwiler, the mother of William L. Detwiler, Mary H. Parkins, Josephine Clinton, Emma DeL. Gallagher, and John B. Detwiler, died seized of the legal and equitable title of lots 3 and 4, in block 256, in the city of Omaha, as designated and described on the surveyed plat of said city, and that said lots descended to her said children and heirs at law, subject to the curtesy right of her husband, William H. Detwiler. That each of her said children inherited from her the undivided one-fifth of said lots subject to the life estate, or tenancy by the curtesy, of the said William H. Detwiler, and that her said children were tenants in common of said real estate.

And it was further found that in May, 1874, shortly after the death of Mary A. Detwiler, her said children and heirs at law, made, executed, and delivered to William H. Detwiler, their father, a joint power of attorney, dated May 29, 1874, recorded October 8, 1874, in book 17 of deeds of the records of said county, on pages 5, 6, and 7, empowering him "to bargain, sell, and convey" the said real estate for them and in their names; that said power of attorney was not obtained by fraud, and was a valid instrument in all respects; that under this power of attorney, William H. Detwiler, as attorney in fact of the heirs of Mary A. Detwiler, and in the names of four of them, on October 7, 1874, made, executed, and delivered to one of his sons, John B. Detwiler, and one of said heirs, a vol-

untary conveyance of said real estate, without consideration, which was recorded October 8, 1874, in book 17 of deeds of the records of said county, on page 7 ; that said attorney in fact had no authority to make such conveyance without consideration, under the power granted to him; that the grantors of the power were tenants in common of the property, and the attorney undertook to convey to one of them, without consideration, the undivided interest of the others, which was in violation of his authority and was voidable.

And was further found that the obtaining of the said conveyance was, in contemplation of law, a fraud and cloud upon the title of the plaintiffs and heirs at law of Mary A. Detwiler, deceased, and that they are entitled to the decree of this court adjudging it void.

And was also further found that none of the plaintiffs had actual knowledge of the conveyance having been made by their attorney in fact to their co-tenant until shortly before bringing this suit, and that they are not shown to have come to the knowledge of any facts indicative thereof, until recently, within less than four years before bringing this action, and that the statutes of limitation have not barred the same.

And was also further found that John B. Detwiler in his lifetime, and his estate since his death, have paid taxes and special assessments for improvements pertaining to said real estate, amounting with interest to $717.84, as reported by the referee, and that the plaintiffs should pay to the estate of John B. Detwiler, deceased, the undivided three-fifths thereof, amounting to $430.71, which sum is made a perpetual lien on the interests of the plaintiffs in said real estate, with interest thereon until paid by them; and that the said Emma DeL. Gallagher should pay to said estate the undivided one-fifth thereof, amounting to $143.57.

It was decreed that the conveyance to John B. Detwiler,

of said lots in the name of the heirs of Mary A. Detwiler, deceased, by their attorney in fact William H. Detwiler, be set aside and canceled, and that on the payment by the plaintiffs to the legal representatives of John B. Detwiler, deceased, of the undivided three-fifths of said sum so paid for the special assessments and taxes on said real estate, being $430.71, with interest, the perpetual lien therefor be canceled.

It was also decreed that the cloud upon the title of the plaintiffs, by said conveyance, be removed on the condition stated, and the deed canceled, and the plaintiffs recover the costs.

To all of which the defendants excepted on the record, and appealed to this court.

From an examination of the pleadings, and the bill of exceptions, and the points of decision attached to the record of the district court, the case turns upon two propositions of law and evidence.

The lots in controversy were owned by Andrew B. Moore. He testified upon the trial, on part of defendants, that he sold the lots to John B. Detwiler; that he received the entire consideration from him, and that by his direction he executed the deed of conveyance to Mary A. Detwiler, a copy of which was put in evidence, and is exemplified in the bill of exceptions, from which it appears to have been executed by Andrew B. Moore and Mary A., his wife, to Mary A. Detwiler, dated and acknowledged April 22, 1867, with covenants of general warranty and consideration of $257, for lots Nos. 3 and 4, in block '256, in the city of Omaha.

There is a large amount of testimony on the part of plaintiffs to the effect that Mary A. Detwiler placed the sum of $300 in the hands of John B. Detwiler at or about the time of the execution of this deed for the purpose of being invested by him, for her, in lots in Omaha. But it does not seem that this testimony was sufficient to satisfy

the trial court to adopt the theory that the purchase of
these lots was made pursuant to that investment, but
rather that the lots were purchased by John B. Detwiler for
himself, and the title placed in Mary A. Detwiler for the
purpose of defrauding his creditors in contemplation of
bankruptcy. A careful examination of all the testimony
at the last term of the court, by each member then present,
failed to convince either of us of the fallacy of this theory
so far as it concerned the purchase of the lots by John B.
Detwiler for himself, and the placing of the title in the
name of his mother Mary A. Detwiler for his own con-
venience and purposes.

The honorable judge in the points of decision says, re-
garding the resulting trust claimed by the defendants in
favor of John B. Detwiler, by reason of his having paid
the consideration to Andrew B. Moore, "that, upon all the
authorities, the evidence of such payment must be clear,
definite, and satisfactory, although it seems probable that
the immediate consideration to Moore was the cancellation
of his indebtedness to the Bracken firm," etc. While we
agree with this proposition that, in order to establish a re-
sulting trust, the evidence of the payment of the consid-
eration by the person claimed to be the *cestui que trust*
must be clear and definite, we are all of the opinion, from
the evidence before us, that the full and entire consider-
ation for the purchase of the lots in question was made
with the means of John B. Detwiler. Moore himself is
the only witness to this point, and his evidence to that ef-
fect appears to be clear and definite, and we think it satis-
factory. In saying this we do not seek to ignore the fact
that, as above stated, there is a large amount of conflicting
testimony as to whether or not the alleged trustee, Mary
A. Detwiler, placed in the hands of her son John B., at or
about the time of this transaction, a sum of money to be
invested in town lots in Omaha. But this conflicting tes-
timony, in our view, fails to reach the point and to render

less certain and more indefinite the testimony of Moore' that the consideration for the deed to Mary A. Detwiler was actually paid and delivered to him by John B Detwiler; and there is no evidence whatever to connect any moneys delivered, or claimed to have been delivered, to John B. Detwiler by his mother with the bill for groceries which Moore swears was the consideration for the deed. But we were, and still are, unable to follow the trial court in its conclusion, that such placing of the title in the name of Mary A. Detwiler was for the purpose of defrauding the creditors of John B. Detwiler in contemplation of bankruptcy, or that such intent and purpose on his part is proved with that clearness and certainty required in the present action, where advantage is sought to be taken of such circumstance by parties not creditors of John B. Detwiler, and where the effect would be to work a forfeiture in favor of parties not interested in the bankrupt's estate.

But if it be conceded that the purpose of John B. Detwiler, in having the deed to the lots made to his mother, Mary A. Detwiler, was in contemplation of his taking the benefit of the bankrupt law, and to prevent the property from passing to his assignee in bankruptcy, and thereby tending to defraud his creditors, this, as I understand the law, did not prevent the creation of a resulting trust arising upon such conveyance; did not prevent Mary A. Detwiler taking and holding the lots as a trustee, and not as an absolute owner. Granted that it would create an impassable barrier to either John B. Detwiler or his heirs prosecuting an action for the enforcement of such trust, this would not prevent the trustee, Mary A. Detwiler, or her heirs at her decease, from divesting themselves of such trust, and thereby allowing the title to pass to John B. Detwiler or his heirs.

It appears from the bill of exceptions that John B. Detwiler filed a petition in bankruptcy on May 30, 1868.

There is no evidence that he contemplated this proceeding at the date of the deed. The law is stated by Perry on Trusts, sec. 126: "Where, upon a purchase of property, the conveyance of the legal title is taken in the name of one person, while the consideration is given or paid by another, the parties being strangers to each other, a resulting trust immediately arises from the transaction and the person named in the conveyance will be a trustee for the party from whom the consideration proceeds." By referring to sec. 144, following, it will be seen that the word "strangers," as used in the section quoted, embraces the mother of the *cestui que trust*. In sec. 165, following, the author says: "If the voluntary conveyance is made for some illegal or fraudulent purpose, whether it is a common law or modern conveyance, no trust will result to the grantor; as, if the voluntary conveyance is made to delay, hinder, and defeat creditors."

Of the fifteen examples cited in support of this authority not one of them comes up to the proposition involved in this case. It will be admitted, nevertheless, that, were it established that the title to the property was placed in Mary A. Detwiler by John B. Detwiler for the purpose of defrauding his creditors, or for any unlawful purpose, and such title remained in her and her heirs, an ·action by him or his heirs could not be maintained against her or them therefor.

The learned judge, in his points of decision, says: "Detwiler's repeated statements on oath in his bankruptcy proceedings are in direct conflict with the theory of the alleged trust; the failure to request or demand a conveyance from his mother in his lifetime is strongly against it. Whatever may seem to be the probability, the evidence is not sufficiently strong and decisive to warrant the holding that there was a resulting trust, but it is not deemed necessary to determine whether there was or not." This point is quoted for the purpose of showing that the court below did

not decide that there was no resulting trust, and did not decide against the evidence introduced by defendants for the purpose of establishing such trust. We are therefore relieved of the embarrassment of deciding adverse to the finding of the trial court upon a question of fact when we express the opinion that the evidence establishes the purchase of, and payment for, the lots by John B. Detweiler for himself, and with his own means. The court in its points of decision continues: "The only reason suggested by the proofs for putting the title in his mother's name is that he contemplated bankruptcy proceedings and wished to conceal his ownership. No court could aid him in enforcing a trust originating in such a motive; the heirs might voluntarily execute it. The question remains whether they did so."

It is not necessary to defendants' case that any reason should be suggested or indicated for John B. Detwiler putting the title in his mother's name; nor do I think that anything is suggested or indicated by the proofs to that effect worthy of serious consideration. This brings us to the consideration of the second point which is indicated by the clause of the points of decision last quoted, that, although it were conceded that "no court could aid him in enforcing a trust originating in such a motive," the heirs of Mary A. Detwiler having conveyed the title to John B. Detwiler, in recognizing this fact a court of equity does not enforce the trust but simply recognizes its enforcement by the parties upon whom the trust title was cast by descent.

But it is contended that, as the power of attorney by virtue of which the deed of the plaintiffs and Mr. and Mrs. Gallagher to John B. Detwiler of these lots did not in terms empower the attorney therein named to convey land, except upon bargain and sale, no title whatever passed by such deed; that such deed is absolutely void, and therefore the case stands as though no such conveyance had been made. We cannot agree to this proposition. The power

of attorney, executed by all of the original parties, empowered their attorney, William H. Detwiler, for and in the name, place, and stead of the persons executing it, to bargain, sell, and convey to such person or persons, and for such price or prices, on such terms of credit as he might see fit, all or any portion of the real estate, lands, tenements, and hereditaments of which the said Mary A. Detwiler died seized, and situate in the county of Cass, in this state, or elsewhere, and in their names make, execute, and deliver such deed or deeds as might be necessary to convey their respective interests in and to said lands.

Before entering upon the inquiry whether, in legal strictness, this power of attorney, upon its face, empowered William H. Detwiler, the attorney therein named, to convey the lots in question without bargaining for the sale thereof, and receiving a consideration therefor in money, I will briefly examine into the facts and circumstance of the execution and delivery of the instrument as shown by the evidence.    It appears from the testimony of William H. Detwiler, and inferentially that of the other witnesses than Mrs. Matilda A. Detwiler, that at the time of the death of Mary A. Detwiler the homestead property of the family at Weeping Water stood in her name, and that all of the sons and daughters and daughters' husbands were willing to execute a quitclaim deed of the same to their father, William H. Detwiler; also to turn over to him all the personal property and effects of the deceased which had not been divided up amongst themselves.    Mrs. Matilda A. Detwiler testified that she was present at the funeral of Mary A. Detwiler at Weeping Water, together with her husband, John B. Detwiler, and that a day or two after the funeral, as witness and her husband were about going to the depot to return home, the plaintiff, Mrs. Josephine Clinton, her husband and William L. Detwiler, all stood at the wagon which was to take them to the depot, when it was mentioned and acquiesced in by all present that papers were to be made out

by which the said property was to go into the hands, possession, and control of William H. Detwiler; that there had previously been a general talk, after the funeral, in regard to fixing up those matters; that her husband, John B. Detwiler, said to his father as they stood around the wagon, "Father, come up, and we will attend to those papers."

It appears that subsequent to this William H. Detwiler went to Omaha, and returned to Weeping Water with the power of attorney drawn up and signed by John B. Detwiler and Matilda A. Detwiler; that it was afterwards executed by the other parties to it.    There is a large amount of confusing testimony introduced for the purpose of showing that the power of attorney, as drawn up, was not understood by the parties who executed it, especially as to the clause embracing other property of the deceased than that in Cass county.    But we agree with the trial court that the evidence does not establish fraud on the part of William H. Detwiler in obtaining the power of attorney, that he made no effort to conceal the terms of the instrument, and that all the signers had ample opportunity to know them and should be held to them.

It is very clear from the whole case that this power of attorney was not executed by any of the parties in the view or for the purpose of making William H. Detwiler their attorney to bargain and sell the property described, or any part of it, and account to them for the proceeds, but was intended as a method of placing the Cass county property in his hands, under his control, for the purposes of his support and maintenance; and, as William H. Detwiler testified on the trial, it may be reasonably inferred that this was intended to apply also to any other property which it might be found the deceased owned, or, as he expressed it, "that might be found to come under her jurisdiction."    This being the intent and purpose of the power of attorney, was it a fraud on the part of William H. Detwiler to make the conveyance of the lots in question to his son John B. Detwiler,

under whose roof he expected to live the remainder of his life—such a fraud as would render the conveyance absolutely void? We think not.

As to the consideration, I do not doubt that had this deed been executed by the parties, without the intervention of an attorney in fact, in the terms in which it was executed, although no consideration was received, it would have conveyed the legal title.

From these considerations I come to the conclusion that although executed by an attorney under a power to bargain, sell, and convey, it did carry the legal title to the property conveyed.

It will not be overlooked that the defendants did not come into court asking relief, but only when brought by the plaintiffs to defend their title.

The decree of the district court is

REVERSED AND THE BILL DISMISSED.

THE other judges concur.