JOHN E. HANSON, APPELLANT, V. HANS E. HANSON, APPELLEE.

FILED MARCH 21, 1907. No. 14,937.

1. **Cases Followed.** *Hanson v. Hanson,* 64 Neb. 506, and *Hanson v. Hanson,* 4 Neb. (Unof.) 880, examined, approved and followed.

2. **Quieting Title:** DISMISSAL WITHOUT PREJUDICE. Action of the trial court in permitting plaintiff to dismiss his petition to quiet title without prejudice to the right of the defendant to file a supplemental answer and cross-petition examined, and *held* not prejudicial.

3. ———: REFERENCE. When, in an action to quiet title to partnership lands, it appears that no final accounting has ever been had of the effects of the partnership, the district court may, with propriety, appoint a referee to state the account of the partnership as a preliminary step in determining the interests of the partners in the lands in dispute.

4. **Statute of Limitations:** TRUSTS. The statute of limitations begins to run in favor of a trustee *ex maleficio* of a constructive trust from the time of the discovery of the wrong or fraud, for the prevention of which the trust is imposed; but the statute does not begin to run in favor of the trustee of a resulting trust until such trustee, by some act or declaration, clearly repudiates his trust.

APPEAL from the district court for Wayne county: JOHN F. BOYD, JUDGE. *Affirmed.*

*Ira D. Marston, A. M. Post* and *J. D. Stires,* for appellant.

*A. A. Welch* and *Milchrist & Scott, contra.*

OLDHAM, C.

This opinion, we trust, will prove to be the concluding chapter of the history of a controversy that has engaged the attention of the district court for Wayne county for a period of ten years, and branches of which have been twice reviewed in this court. For the former opinions, see *Hanson v. Hanson,* 64 Neb. 506, and 4 Neb. (Unof.) 880. We can, perhaps, simplify and condense a discussion of the issues, urged on our attention by able and learned counsel for each of the contestants, by an abbreviated review of the facts underlying the controversy.

In 1880 John E. Hanson, plaintiff in this cause of action, and his brother, Hans E. Hanson, the defendant, entered into a copartnership in the mercantile and live stock business in Stanton, Iowa. In the following year they came together to the state of Nebraska for the purpose of investing in lands and continuing the stock business in this state. After visiting different portions of the state, defendant, Hans E. Hanson, returned to Iowa, and the plaintiff procured contracts for the purchase of the lands now in controversy, after which he also returned to Iowa. In the following summer they again came to Nebraska, and examined the lands and made payments thereon, the title being taken in the name of John E. Hanson. In the fall of 1882 the mercantile establishment was disposed of and its affairs wound up, but the stock business was contined by the brothers in partnership. In the spring of 1883 the plaintiff, John E. Hanson, came to Nebraska to improve and cultivate the lands in controversy, and notice of the dissolution of

the firm in Iowa was published. The evidence shows, however, that it was agreed between the partners that the stock business was to be conducted in the name of Hans E. Hanson, in Iowa, and that John was to remain a silent partner in the firm, and that John was to likewise engage in the stock business in his own name in Nebraska for the benefit of the partnership. In 1887 defendant, Hans E. Hanson, disposed of his effects in Iowa, and also removed to Nebraska, and with his brother entered into possession of the lands in controversy. There are 600 acres of these lands, all in Wayne county, in two tracts, which, for convenience of distinction, we shall speak of as the lands in section 32 and the lands in section 14. Defendant, Hans E. Hanson, remained on the lands in section 32 and aided in their cultivation until the year 1890, when, by the request and at the suggestion of his brother, he removed to a quarter section of the land in section 14. It appears that soon after his arrival in Nebraska Hans E. Hanson began to talk with his brother about a division of the lands; that the brother discouraged the proposition, claiming that the lands were safer in his hands because the defendant was addicted to gambling and might squander his estate if turned over to him; that the final result of these conversations was an agreement by the plaintiff that, if defendant would remain on the lands for five years and aid in their cultivation and in paying off the incumbrances, then plaintiff would either sell the lands and divide the proceeds, or convey defendant's portion to him. It appears that there was a further talk between the parties on this question in the year 1894, in which the plaintiff insisted that the defendant had little or no interest in the lands.

In 1897 plaintiff in this cause of action brought a suit in ejectment against the defendant for the possession of the quarter section of land on which the defendant resided in section 14. In this action the defendant admitted that the legal title to the lands was in the plaintiff, but alleged that the lands were held by plaintiff

in trust for the partnership, and that they had been pur-
chased with partnership funds.    There was a trial of
these issues to a jury, and a verdict and judgment for the
defendant, which was never appealed from.    In 1898
plaintiff instituted a suit against defendant in the district
court for Wayne county for an accounting of the affairs
of the partnership.    This suit was subsequently dis-
missed, and in 1899 plaintiff instituted a suit for the pur-
pose of quieting the title in him to both tracts of land
in controversy.    In the petition he alleged, among other
things, that he was informed and believed "that the de-
fendant claimed that said lands were purchased with the
assets of an alleged partnership, claimed to have existed
between the plaintiff and the defendant prior to the year
1883."    Defendant answered this petition, admitting that
the legal title to the lands was in the plaintiff, and
alleging that the lands were purchased with the funds of
the partnership, setting out fully the continuation of the
partnership up to the time of the institution of the suit.
He also pleaded, by way of estoppel as to the fact that
the lands were purchased with partnership funds, the
judgment of the district court in the ejectment suit
above referred to.    The answer, however, did not contain
any prayer for equitable relief.    This action, which for
distinction from the one following we shall term the
"title suit," proceeded to a judgment in the district court,
in which plaintiff's title was quieted in all the lands
except the quarter section in section 14 on which defend-
ant resided, and as to this tract the bill was dismissed.
This cause was taken by appeal to this court, as we
shall presently point out.    While the "title suit" was
pending on appeal, plaintiff instituted another action
against the defendant in the district court for Wayne
county for the partition of the quarter section of land
situated in section 14 occupied by the defendant.    In
this action defendant answered, setting up his claim to
an undivided one-half interest in this particular quarter
section, as well as in all the partnership lands, and also

setting up the pendency of the "title suit" on appeal, pleading anew all the issues therein involved, and prayed that this suit be held in abeyance until the determination of the "title suit," and until a final accounting of the partnership affairs was had. This partition suit proceeded to judgment in the district court and was likewise appealed to this court.

On the 17th day of April, 1902, an opinion was rendered in this court in the "title suit" by ALBERT, C., reversing and remanding the cause, in which it was determined that it is conclusively established by the judgment in the ejectment case "that the title to the lands in controversy was acquired by the plaintiff while he and the defendant were in partnership, with partnership funds and as a partnership venture, and that he holds the legal title thereto in trust for the copartnership." *Hanson v. Hanson,* 64 Neb. 506. On the first day of the term following the return of this mandate, defendant by leave of court filed an amended answer, in which he prayed for affirmative equitable relief. Issue was joined on this amended answer and cross-petition by an answer to the cross-petition, filed by the plaintiff on March 7, 1903. On May 11 following the defendant asked leave to file a second amended and supplemental answer to the cross-petition. This leave was objected to by the plaintiff, who in his turn asked leave to dismiss his petition. The court permitted plaintiff to dismiss his petition without prejudice to the defendant's right to file his second amended and supplemental answer and cross-petition. This supplemental answer and cross-petition contained all the allegations of the original answer, and set up the judgment and mandate of the supreme court, and asked that an accounting be had of the affairs of the partnership and that, on the statement of such account, partition be made of the lands in conformity with the interest of each of the partners therein. The plaintiff subsequently filed an answer to this supplemental answer and cross-petition, and defendant filed a reply.

The opinion of this court in the partition suit was de-
livered by AMES, C., on October 7, 1903, and the mandate
of reversal on this opinion was returned to the district
court for Wayne county on November 2, following. The
opinion is reported in 4 Neb. (Unof.) 880. Afterwards,
on November 10, defendant filed a motion for leave to
file a supplemental reply and also a motion to consolidate
the two cases. On April 25, 1904, Honorable N. D.
Jackson was appointed by the court as referee to report
his findings on all questions of law and fact involved in
the controversy and to state the account of the partner-
ship, if necessary. The referee reported his conclusions
of law, which were, in substance, that the two causes of
action should be consolidated, that plaintiff, John E.
Hanson, held all the lands in trust for the partnership
firm, and that the action was not barred by the statute
of limitations. He thereupon stated the account between
the partners, finding that there was about $2,500 due the
plaintiff from the defendant and about $5,000 from the
partnership. The report also found the amount of the
mortgage indebtedness existing against the lands, and
recommended a partition thereof in conformity with these
findings. This report, with slight corrections, was ap-
proved by the district court, and judgment was entered
thereon. To reverse this judgment plaintiff has again
appealed to this court.

No objection is urged against the partnership account
as stated by the district court, except such objection
as is involved in the plea of the statute of limitations,
and it is especially urged that one item charged against
the plaintiff for the proceeds of the sale of a quarter sec-
tion of partnership lands was, in any event, subject to
the bar of the statute. In the opinion in the partition
suit between these parties it was said with reference to
the plea of the statute of limitations as against a part-
nership accounting: "The defendant seeks the repose of
the statute of limitations, but we think it ought to be
denied to him. The transactions between the parties

with respect to this land have extended over a long term of years and appear not yet to have terminated. Neither party should be heard to complain that the other has not sooner called for an accounting and settlement." 4 Neb. (Unof.) 880. Counsel for plaintiff seek to avoid the effect of this holding, as being the established law of the case, by urging that the question of the title to the lands by adverse possession was not raised in the suit for partition, but that, on the contrary, it was admitted that, as far as this one quarter section was concerned, the title was held in trust for the partnership. This contention, as far as it goes, is well founded, and there was no claim of title by adverse occupancy urged in the partition case, but it is urged in the partition case that the title to all the lands was held by plaintiff as trustee for the partnership, and that all the lands were purchased with partnership assets, and that an accounting of the entire transaction was essential to the determination of the rights of the parties in the partnership lands. Consequently, the effect of the holding of the opinion is that the statute of limitations has not run against the partnership accounting, and that such an accounting is a necessary incident to a judgment of partition of the lands. Independently of the holding of this court on this question, we would say that the finding of the referee that the partnership in the lands of live stock business continued without interruption down to the year 1897 is fully and, we think, conclusively established by the testimony. It is further established that plaintiff recognized the fact that there had been no settlement of the partnership when he filed his suit for a partnership accounting in the year 1898. This conclusion disposes of the plea of the statute of limitations as to the charge against plaintiff for the proceeds of a quarter section of these partnership lands, which he had sold before any litigation had begun between the parties.

This, then, brings us to the next contention urged by the plaintiff that the statute of limitations has quieted

his title to all the lands, except the quarter section in section 14 occupied by the defendant, and that, for the purpose of the running of the statute, the second amended and supplemental answer filed by defendant in the "title suit" in 1903 should be regarded as a new cause of action, as far, at least, as the request for a partnership accounting is concerned. When the "title suit" was instituted, plaintiff's petition alleged, as before set out, on information and belief, that defendant claimed an undivided one-half interest in all the lands and that the lands had been purchased with partnership funds. The answer first filed by the defendant reaffirmed this allegation of the petition, and set out with particularity the continuance of the partnership up to the institution of the suit, and also alleged that the affairs of the partnership had not been wound up nor any accounting had, but, as before stated, it had no prayer for equitable relief. But, before plaintiff made any effort to dismiss his bill to quiet title, defendant had filed without objection his first amended answer and cross-petition, in which he did pray for equitable relief and asked for a partition in conformity with the interests of the partners in the lands. This answer and cross-petition had been answered by the plaintiff and issues joined on it before the plaintiff attempted to dismiss his petition. In this state of the record, the trial court was clearly right in permitting plaintiff to dismiss his petition without prejudice to defendant's right to equitable relief on his answer and cross-petition.

The original petition filed by plaintiff in the "title suit" was for the purpose of quieting all conflicting claims of title in the lands between plaintiff and defendant. It was instituted under the code, which, for the purpose of preventing a multiplicity of suits, has enlarged and expanded the general equity jurisdiction of the district courts, so as to permit an action of this nature at the suit of a plaintiff, whether in possession of the disputed lands or not. The plain intent of the statute is to determine in one cause of action all conflicting claims of all parties to

the suit to all the lands in dispute between them. And, when the district court takes jurisdiction of such a cause of action, it takes it with power to do whatever is necessary to a full exercise of its jurisdiction, and, whenever an accounting is essential to a determination of the rights of the parties in the lands in controversy, the court may direct such an accounting as a preliminary step to its final conclusion, and, when such an accounting is necessary, it may, with propriety, be the subject of reference. *Foree v. Stubbs,* 41 Neb. 271; *Dolen v. Black,* 48 Neb. 688; *Lavender v. Holmes,* 23 Neb. 345; *St. James Orphan Asylum v. Shelby,* 75 Neb. 591; *Mills v. Miller,* 3 Neb. 87. If we are correct in the view we have expressed as to the nature and extent of an action to quiet title under the statute, it would follow that the referee was right in his conclusion of law that the two actions have a common object, the settlement of the dispute between the same parties, as to two tracts of land, growing out of one venture, purchased at the same time from a common fund; and the two actions were, therefore, properly consolidated that an end might be reached of this vexatious and long continued dispute.

It having been determined, as before set out, that plaintiff holds the legal title to the lands in controversy in trust for the partnership, the final question arises as to when the statute of limitations began to run in his favor as against the defendant. It is true, as contended by plaintiff, that his trust in the lands was an implied, as distinguished from an express, trust. Implied trusts are of two species, one denominated a "resulting trust," and the other a "constructive trust." In the first class are those trusts which attach to a legal estate acquired by consent of the parties, not in violation of any fiduciary duty or trust relation, for the common benefit of both trustee and *cestui que trust.* This trust arises out of, and is declared in favor of, the intent of the parties creating it. Its inception is in good faith and in furtherance of fair and honest dealing. The other species of implied trusts,

which is called "constructive trusts," is one imposed by a court of equity for the purpose of enforcing an equitable right as against the fraudulent intent of the trustee *ex maleficio*. This latter class of implied trusts have their origin in the bad faith of the trustee, and are imposed by a court of conscience to defeat his wrongful ends. 3 Pomeroy, Equity Jurisprudence (3d ed.), sec. 1155. Where a constructive trust is imposed, the statute begins to run against the *cestui que trust* at least from the time of the discovery of the wrong, because the trust is held against his interest and without his consent. But with reference to the former class of trusts, which are created for the benefit of both the trustee and the *cestui que trust,* the statute of limitations is not put in operation by any act of the trustee in furtherance of his trust, but only by some act which is equivalent to a repudiation of it. *Edwards v. University,* 1 Dev. & Bat. Eq. (N. Car.) 325, 30 Am. Dec. 170; *O'Toole v. Hurley,* 115 Mich. 517; *Fawcett v. Fawcett,* 85 Wis. 332; 1 Perry, Trusts (5th ed.), sec. 139.

In the case at-bar, it is clear that plaintiff held the lands in trust for the partnership, not by his own wrong, but by consent of the partnership, and that the statute did not begin to run in his favor against his *cestui que trust* until he had done some act tending to repudiate his trust. His occupancy of the land for most of the time was concurrent with that of the defendant. The proceeds of the land were invested for a common purpose, the raising of stock and discharging the obligations against the trust estate; and no act was committed by the trustee tending to show a repudiation of the trust, until he instituted his suit in ejectment against the defendant in the year 1897.

It therefore follows that the plea of the statute of limitations is unavailing, and we are of opinion that the judgment of the district court rendered on the report of

41

the referee is right, just and equitable, and we recommend that the judgment be affirmed.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.