ADOLPH J. JIRKA ET AL., APPELLEES, V. BERTHA M. PRIOR ET AL., APPELLEES, IMPLEADED WITH GEORGE H. PESTER ET AL., APPELLANTS.

243 N. W. 2d 754

Filed June 30, 1976. No. 40380.

Kennedy, Holland, DeLacy & Svoboda, for appellants.

Marks, Clare, Hopkins, Rauth & Garber, for appellees Jirka et al.

Starr & Starr, for appellees Prior et al.

Perkins, Sacks & Hannon, for appellees Hannon et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

This appeal involves an alleged resulting trust in certain Sarpy County real estate. Appellants, George H. and Betty J. Pester, by cross-petition, claimed a one-third interest in the property against the other defendants involved in the original action to quiet title. Motion for summary judgment was filed by the appellants, George H. and Betty J. Pester. An opposing motion for summary judgment was filed by the defendants holding interests acquired through Lester V. Prior, deceased. The District Court overruled the Pester motion for summary judgment; sustained the Prior motion for summary judgment; and dismissed the Pester cross-petition with prejudice. George H. and Betty J. Pester have appealed.

In 1957 or 1958, Charles R. and Mary M. Hannan, husband and wife, and Lester V. and Bertha M. Prior, husband and wife, contracted to purchase, and later took by deed, certain farm land in Mills County, Iowa, known as Folsom Farms. On March 27, 1959, the Hannans and the Priors entered into a contract with George H. Pester under which Pester purchased an undivided one-third interest in Folsom Farms, which included about 1,212 acres of land. The purchase price of Pester's one-third interest was $100,000, payable $10,000 down, and the balance payable $3,333.33 annually, plus interest at 5 percent on the unpaid balance until fully paid. After the parties entered into this contract a corporation known as Folsom Farms, Inc., was formed in which an undivided one-third stock interest was held by the Hannans, the Priors, and the Pesters respectively. Much of the land was thereafter cleared of timber and made tillable and otherwise improved. The corporation owned certain buildings and managed the operation of the

farm. It did not own the land and the corporation was dissolved in 1966, following the sale of the Folsom Farms property.

Lester V. Prior, during his lifetime, was engaged in the real estate business in Council Bluffs, Iowa, specializing in farm management and sales. Charles R. Hannan was a banker in Council Bluffs, and George H. Pester was a physician and surgeon.

By a written offer dated January 18, 1966, the Hannans, the Priors, and Dr. Pester agreed to sell the Folsom Farms property, and the offer was duly accepted by Arlie J. and Mary L. Suhl. The agreement involved an exchange of the Folsom Farms for farm land owned by the Suhls in Sarpy County, Nebraska, known as the Bellevue Farms, plus the payment by the Suhls of a substantial amount of cash. Pursuant to the agreement, the Hannans, the Priors, and the Pesters conveyed the Folsom Farms property to the Suhls by warranty deed dated April 21, 1966. Because of tax considerations, the Suhls were directed to, and did, convey the Bellevue Farms property to Charles R. and Mary M. Hannan and Lester V. and Bertha M. Prior, the record owners of the Folsom Farms property.

Lester V. Prior made the arrangements for the sale and exchange of the properties and for the mortgages on both of them, and managed the financial affairs of Folsom Farms and Bellevue Farms until the time of his death. It was the intention of Hannan, Prior, and Pester that the same relationship with respect to the operation and ownership of the Folsom Farms property would carry over to the Bellevue Farms property, and a partnership was set up with respect to the Bellevue Farms operation. A bank account was established for the partnership, and liability insurance on the Bellevue Farms property was taken out in the name of Bellevue Farms Partnership. Lester V. Prior managed the financial affairs of the partnership until his death, and thereafter Charles R. Hannan managed the financial affairs. Part-

nership income tax returns for the Bellevue Farms were filed for each year from 1967 through 1973. Those returns all showed a one-third interest each in Charles R. Hannan, George H. Pester, and Lester V. Prior or his estate. Copies of the returns were given to each taxpayer.

Lester V. Prior died April 8, 1967. An ancillary proceeding for determination of heirship was conducted in Sarpy County, Nebraska, following his death. With respect to the Bellevue Farms the decree found that he died seized of a one-fourth interest in the Bellevue Farms property, and that his only heirs-at-law were his wife, Bertha M. Prior, and four daughters. Although Dr. Pester's name was not on the record title of the Bellevue Farms property, he was kept advised of various negotiations for sales of portions of the property and joined in the execution of a contract for sale of part of the property to Bellevue Industrial Foundation, and was also included as a grantor in an easement to the Omaha Public Power District in February of 1968.

On October 6, 1971, the Hannans and Bertha M. Prior entered into a contract for the sale of part of the Bellevue Farms property to Adolph J. Jirka and others without the knowledge or consent of the Pesters. Upon being informed of the sale by Charles R. Hannan, George H. Pester executed and recorded an affidavit in the office of the register of deeds on October 13, 1971, claiming an undivided one-third interest in the land.

On May 10, 1974, the Jirkas brought this action against all the defendants to quiet the title to the land purchased by them, subject to the payment of the purchase price as provided by the contract. By stipulation of all parties, partial summary judgment was entered directing all defendants to execute a deed to the Jirkas, and providing for the escrow of payments due on the Jirka contract, under jurisdiction of the court, pending determination of the rights of the defendants among themselves. That judgment and the Jirka contract are not

involved in this appeal. The cross-petition of the Pesters which initiated the litigation now on appeal was filed on July 5, 1974.

Dr. Pester made all payments which were demanded of him under the March 27, 1959, contract. There is also evidence that the 1959 contract was subsequently orally modified by agreement between Charles R. Hannan, Lester V. Prior, and George H. Pester so that additional payments were not needed. It is admitted that in addition to the downpayment of $10,000, Dr. Pester made payments of more than $21,000 up to and including April 28, 1964, on the original contract with the Hannans and Priors dated March 27, 1959. Dr. Pester also claims payments of more than $7,000 in 1967 and 1968. In addition, the Suhls obtained a judgment against the Hannans and Dr. Pester and the estate of Lester V. Prior, growing out of a boundary line dispute on the Folsom Farms property. The judgment was in the amount of $9,565.50, plus costs. George H. Pester and Charles R. Hannan each paid $5,000 in full satisfaction of that judgment. In another action by the Suhls against the Hannans, Dr. Pester, and the estate of Lester V. Prior, for a deficiency in the acreage of the Folsom Farms property, the Prior estate was dismissed on motion on the grounds of the statute of limitations with respect to claims against the estate. That action was also settled by Charles R. Hannan and Dr. Pester by the payment of $20,099.35 each. That amount was paid by Dr. Pester in October 1972. No contribution on these partnership obligations has been paid by the Prior estate, nor any of the heirs.

The evidence does not disclose whether any part of the cash consideration received for the Folsom Farms sale was applied or credited to Dr. Pester in any way, nor does the evidence disclose whether his distributive share of the partnership income, including capital gains income, was applied to his capital account or otherwise adjusted in distributions by the partnership.

The District Court found that the Pesters knew that they were not record owners of the Bellevue Farms on May 5, 1969; that they knew of adverse claims as to their interest on May 5, 1970; that the last admitted payment on the original contract of March 27, 1959, was made on August 24, 1967; that there was inexcusable negligence on the part of the Pesters constituting laches; and that the evidence is doubtful, uncertain, and insufficient to establish any resulting trust. The court sustained the motion for summary judgment on behalf of the Prior heirs and dismissed the cross-petition of the Pesters. This appeal followed.

It is apparent from the factual recitals already set out that virtually every critical issue in this appeal involves some dispute of some material facts. A motion for summary judgment is not a substitute for a motion for directed verdict. Upon a motion for summary judgment the court examines the evidence, not to decide any issue of fact, but to discover if any real issue of fact exists. The moving party is not entitled to summary judgment except where there exists no genuine issue as to any material fact in the case and where under the facts he is entitled to judgment as a matter of law. Summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt. Any reasonable doubt touching the existence of a material issue of fact must be resolved against the moving party. Barnes v. Milligan, *ante* p. 50, 241 N. W. 2d 508. See, also, Green v. Village of Terrytown, 189 Neb. 615, 204 N. W. 2d 152. The requirements to sustain a motion for summary judgment are the same whether one party or both parties have moved for summary judgment. Hiram Scott College v. Insurance Co. of North America, 187 Neb. 290, 188 N. W. 2d 688.

The District Court's finding that laches was involved here is unsupported by the present record. The appellees contend, however, that the 4-year statute of limitations of section 25-207, R. R. S. 1943, for fraud and non-

contract injuries, applies rather that the 10-year statute of limitations for the recovery of title or possession of land under section 25-202, R. R. S. 1943. The appellees also contend that the 4-year statute began to run with the death of Lester V. Prior, or, at the latest, from March 5, 1970, when the Pesters' attorney received a letter from Mrs. Prior's attorney indicating that she might not recognize Dr. Pester's interest in the Bellevue Farms property.

The statute of limitations does not begin to run in the case of a resulting trust until the trustee clearly repudiates his trust. The time when the statute of limitations commences to run must be determined upon the facts in each case. Hanson v. Hanson, 78 Neb. 584, 111 N. W. 368; Windle v. Kelly, 135 Neb. 143, 280 N. W. 445. It is clear in this state that a resulting trust does not end with the death of the trustee and heirs of the trustee take the property subject to the trust. Bailey v. Dobbins, 67 Neb. 548, 93 N. W. 687; Detwiler v. Detwiler, 30 Neb. 338, 46 N. W. 624.

In the case before us there is no evidence of repudiation by any of the successors in title of Lester V. Prior, except Mrs. Prior, at any time prior to October 6, 1971. On the other hand, the Hannans, who, except for Mrs. Prior, constitute a majority of the original trustees, not only did not repudiate the Pesters' claim but fully acknowledge that claim and join in the Pesters' request for declaration of a resulting trust, subject only to accounting and payment of amounts, if any, still owing by Dr. Pester under the original Folsom Farms contract of March 27, 1959.

Income tax returns showing Dr. Pester's one-third interest continued to be filed up to and including 1973, and were certainly inconsistent with any claim of repudiation. Unless substantial new evidence be presented at the trial, the evidence is clear and convincing that there was no clear repudiation of the trust here before October 6, 1971, in any event. Under such circumstances it

is immaterial whether a 4-year or a 10-year statute of limitations applies, and it is also clear that no laches has been established.

With respect to the underlying issues involving a resulting trust, the rules in this state have been well established. Where a transfer of property is made to one person and the whole or a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made although the payment is not made in money. The resulting trust is raised by implication of law and presumed always to have been contemplated by the parties, the intention as to which is to be found in the nature of their transaction, but not expressed in the deed or instrument of conveyance. Campbell v. Kirby, 195 Neb. 610, 239 N. W. 2d 792; Holbein v. Holbein, 149 Neb. 281, 30 N. W. 2d 899; Restatement, Trusts 2d, § 455, p. 424. In the absence of substantially new or different evidence at trial, the evidence before the court on the motion for summary judgment was clear and convincing that Dr. Pester was intended to, and did, hold an undivided one-third interest in the Bellevue Farms property under a resulting trust. Accounting or other evidence of the amount Dr. Pester has paid or should have had credited on the original contract of March 27, 1959, is incomplete and uncertain and remains to be determined.

The judgment and decree of the District Court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.