Sell v. West.

SELL *et al., Appellants,* v. WEST *et al.*

Division Two, December 22, 1894.

1. **Resulting Trust**: FRAUDULENT PURPOSE. A resulting trust can not arise when the transactions on which the supposed trust is bottomed appear to have had their origin in any fraudulent purpose.

2. ———: ———: LIMITATIONS. Where a son obtains the title to his father's land through transactions intended by the father to defraud his creditors, no resulting trust arises in favor of the other heirs of the father upon the latter's death, and this is true, although the claims of the father's creditors are barred by the statute of limitations.

3. **Trusts and Trustees.** The relation of trustee and *cestui que trust* must result from the facts as they exist at the time of the transaction out of which the trust arises, and can not be created by subsequent and independent circumstances.

4. **Practice**: EQUITY. Courts of equity have no more right than courts of law to act upon crude notions of what is right in a particular case, without reference to established rules and precedents.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*Charles E. Pearce* for appellants.

The controlling question in an inquiry as to whether there is a resulting trust is the ownership of the purchase money. If such ownership be established by parol, so as to leave no room for a reasonable doubt in the mind of the chancellor, the resulting trust exists and follows the real ownership of the property.

The respondent, West, is a fiduciary, the same as if he took directly from Billon. Bispham's Principles of Equity [4 Ed.], p. 119, *et seq.;* Hill on Trustees, p. 91, and cases; *Kelly v. Johnson*, 28 Mo. 249; *Baumgartner v. Guessfeld*, 38 Mo. 36; *Pocock v. Nelson*, 50 Mo. 256; *Sharp v. Berry*, 60 Mo. 575; *Shaw v. Shaw*, 86 Mo. 594. A resulting trust may be proved by parol, even against the face of the deed. *Sharp v. Berry*, 60 Mo. 575; *Boyd v. McLeod*, 6 Johns. Ch. 245; *Fausly v. Jones*, 7 Ind. 277; 1 Perry on Trusts, secs. 137, 138, and cases; *Larkins v. Rhodes*, 23 Ind. 157. And in opposition to defendant's answer denying the trust. *Baker v. Vining*, 30 Me. 126. The admission of defendant that the consideration was paid by Thomas H. West, or any act done constituting a ground for a resulting trust, are admissible. *Baumgartner v. Guessfeld*, 38 Mo. 36; *Lloyd v. Carter*, 17 Pa. St. 216; *Shaw v. Shaw*, 86 Mo. 594; Perry on Trusts, sec. 77, *et seq.* The statements of Thomas H. West antecedent to, and contemporaneous with, the deed to Ruffner and to the defendant, showing how they were to hold the property, are competent evidence. *Kennedy v. Kennedy*, 57 Mo. 73; *Johnson v. Quarles*, 46 Mo. 423; *Ringo v. Richardson*, 53 Mo. 385; Hill on Trustees, p. 94. The plea of laches is without merit. "Laches" is a question of fact on the evidence, an equitable defense determinable by the particular circumstances of the case. The plea stands upon principles identical with the doctrine of estoppel. The acts, representations or silence of the party must have been influenced, the other to do that which he otherwise would not have done, and, therefore, work a fraud or injury to him. He must also himself have been ignorant of the true facts. But if he has not been misled to his hurt, if no injury has arisen, or if the truth be known to the defendant, or if he had the means of knowledge, then

the plea can not stand, because exact justice can be done by the decree, and the parties remitted to their true position, and where the decree can award to him all that he has ever been entitled to, and where the right to relief is clear, lapse of time short of the period fixed by the statutes of limitations will not bar a claim to equitable interference. *Landrum v. Bank*, 63 Mo. 48; *Stevenson v. Saline Co.*, 65 Mo. 425; *Pike v. Martindale*, 91 Mo. 268; *Schradski v. Albright*, 93 Mo. 42; *Bergen v. Bennett*, Caine's Cases, 19; Bigelow on Estoppel, 438; *Dickinson v. Cosgrove*, 100 U. S. 518; *Spurlock v. Sproule*, 72 Mo. 504; *Burter v. Lawson*, 72 Mo. 227; Bigelow on Frauds, p. 447; *Doughty v. Doughty*, 3 Halstead Ch. 649; *Kane v. Bloodgood*, 7 Johns. Ch. 110. The bill prays that the decree shall award to defendant all that he was ever entitled to as an heir at law, with full credits for all disbursements, charges and expenses shown, or which can be shown, to have been made.

*Fisse & Allen* for respondents.

(1) The plaintiff's action proceeds altogether upon the theory that out of the circumstances stated in the petition there arose in favor of Thomas H. West, the ancestor of the plaintiff, a resulting trust, which continued until the time of his death, and which beneficial title descended, in part, to the plaintiff as one of the heirs of the original beneficiary. It is admitted that no enforcible express trust was ever created, and that there is nothing in the circumstances stated in the petition and shown in the evidence that will sustain a claim that any constructive trust ever arose or existed, using the term "constructive trust" in its proper technical sense. "It is absolutely indispensable that the payment should be actually made by the beneficiary,

B., or that an absolute obligation to pay should be incurred by him as a part of the original transaction of purchase at or before the time of the conveyance. No subsequent and entirely independent conduct, intervention or payment on his part would raise any resulting trust.'' 2 Pomeroy's Equity Jurisprudence, secs. 1031, 1037. ''Trusts arising by operation of law should not be declared upon any doubtful evidence or even upon a mere preponderance of evidence. There should be no room for reasonable doubt as to the facts relied upon. *Johnson v. Quarles*, 46 Mo. 423; *Forrester v. Scoville*, 51 Mo. 268; *Jackson v. Wood*, 88 Mo. 76. It is submitted that, under the foregoing rules of equity and evidence, the evidence here is insufficient to raise a resulting trust. (2) There is no room for reasonable doubt that the purpose of the conveyances set out in the petition was to enable Thomas H. West to defeat the just claims of his creditors, by putting his property beyond the reach of process. Where, under any circumstances, a resulting trust might arise out of a conveyance, that trust will be defeated, if the conveyance appears to have been made in furtherance of any fraudulent purpose. *Henderson v. Henderson's Ex'rs*, 13 Mo. 151; *Miller v. Davis*, 50 Mo. 572; *Higgins v. Higgins*, 55 Mo. 346; 79 Mo. 538; *George v. Williamson*, 26 Mo. 190; 1 Perry on Trusts [3 Ed.], p. 181, sec. 165; *Kinney v. Mining Co.*, 4 Saw. 382; *Edwards v. Haverstick*, 53 Ind. 347; *Shaw v. Millsaps*, 50 Miss. 380. There is no implied trust possible under the facts presented in this record. The record excludes the possibility of the existence of any implied trust, by showing distinctly the existence of an express trust. In equity, as in contracts, proof of an express agreement excludes the possibility of any implied undertaking. *Green v. Cates*, 73 Mo. 115; *Rasdell v. Rasdell*, 9 Wis. 379; *Bartlett v. Bartlett*, 14 Gray (Mass.), 277;

*Schafer v. Huntington*, 53 Mich. 310; *Remington v. Campbell*, 60 Ill. 516. The relation of trustee and *cestui que trust* must result from the facts as they exist at the time of the transaction out of which the trust arises, and can not be created out of subsequent events that work a change in the original circumstances and conditions. *Kelly v. Johnson*, 28 Mo. 249; *Hunt v. Friedman*, 63 Cal. 510; *Dyer's Appeal*, 107 Pa. St. 446. (3) Plaintiff has been guilty of such laches as ought to preclude her from recovering in this case. *Brown v. County*, 95 U. S. 157; *Godden v. Kimmell*, 99 U. S. 201; *Burgess v. Railroad*, 99 Mo. 496; *Burdett v. May*, 100 Mo. 13.

SHERWOOD, J.—The parties plaintiff and defendant to this proceeding are (with the exception of defendant Franklin P. Steer, lessee, and plaintiff Walter E. Sell, and defendant Lewis Ruffner, Jr.) the three children of Thos. H. West, to wit, Washington West, Martha E. Sell and Virginia L. Ruffner. Thos. H. West died some time in the summer or fall of the year 1878.

In the year 1862, Thomas H. West, then doing business in St. Louis, became hopelessly involved and bankrupt. He then owned certain property on the north side of Olive street, between Fifth and Sixth streets, and a tract of land out at Shaw's Garden, which properties were sold under foreclosure of a mortgage made by Thomas H. West to Frederick L. Billon and bought in by Billon, the mortgagee. Shortly after this sale, to wit, in July, 1862, Ruffner, the son-in-law of West, made an arrangement with Billon, whereby the latter agreed to convey to Ruffner the property thus bought, whenever the purchaser, Billon, should have repaid himself out of the rents and profits of the property—the indebtedness of Thomas H. West to him. This arrangement was consummated in 1867 by

deed to Ruffner.  Subsequent to the agreement, and possibly subsequent to the consummation of that agreement, the same property was sold under certain judgments recovered against Thomas H. West, and Ruffner became the purchaser and received deeds therefor, the purchase money being furnished by Thomas H. West.

In 1873, Ruffner, becoming involved in financial difficulties, and in order to prevent these properties from being sold to pay his indebtedness, conveyed them to his brother-in-law, defendant Washington West, for an expressed consideration of $25,000, none of which was paid nor intended to be paid.  Defendant Washington West, has had twenty-five feet of the fifty-two and one half feet of the Olive street property conveyed to Mead as trustee of Virginia L. Ruffner, and has had the Shaw place conveyed to Martha E. Sell.  Said defendant yet holds the residue of the property on Olive street, and has acquired property and built a residence of considerable value on Estelle street, which acquired property, it is alleged (and this is probably for the most part true), was acquired with the rents derived from the other heretofore mentioned property.

This proceeding instituted in March, 1888, had for its object the obtaining of a decree declaring that defendant Washington West holds the title to the residue of the property on Olive street, and the property on Estelle street, as a trustee of a resulting trust in favor of the beneficial plaintiff Martha E. Sell, and of the other heirs of Thomas H. West.  An accounting is also asked for concerning the rents and profits from the date of the death of Thomas H. West, and for partition and for other and further relief.

The answer of defendant West, among other things, stated, that all of the transactions set forth in plaintiff's petition, whereby the title to the property in

question became transferred from Thomas H. West to defendant Ruffner, and thereafter to defendant West, were wholly fraudulent and illegal and intended to defraud the creditors, first, of Thomas H. West, and, next, of defendant Ruffner. By this answer it was shown that at the date of the transactions, out of which the petition alleged a resulting trust to arise, Thomas H. West was hopelessly insolvent, that many judgments had been recovered against him, all of which judgments were at the date of these transactions entirely unsatisfied and all of which remained unsatisfied at the time of the institution of this suit.

It further appeared in evidence at the hearing that the partition of the property actually made by the defendant after the death of his father, was so made in pursuance of the understanding and agreement of all of the parties entitled to claim as heirs of Thomas H. West, that the property should be divided precisely as was done. Lewis Ruffner, in his deposition, given in behalf of the plaintiff, particularly claims that he held the title upon the express trust and understanding that at the death of Thomas H. West he should convey to the plaintiff the Shaw place property, should convey one half of the Olive street property to Mrs. Ruffner, and should convey the other half of the Olive street property to the defendant, and that the reason for this apportionment of the property was that thereby the three children of Thomas H. West would receive equal treatment, taking into consideration advancements to the plaintiff and her husband by Thomas H. West made previously to the time when he himself became involved in difficulties. About the facts in the case the record shows no dispute. It is practically conceded on all hands, that the object of the transactions alleged in the petition to have created a resulting trust, was to conceal the property of Thomas H. West from the

creditors who had obtained judgments against him and to defraud these creditors of their claims.

The defendants, the Ruffners, entered an appearance, but, it seems, filed no answer. After hearing the evidence, the lower court dismissed the petition, hence this appeal.

No one can read the record herein without being abundantly satisfied that Thomas H. West had the property transferred, as already indicated, to defeat the claims of his creditors, and place his property beyond the reach of process. Indeed, it is patent of record that the title became vested in defendant West as the result of two separate acts of fraud, the first being designed to defraud the creditors of Thomas H. West; the second to defraud the creditors of Ruffner, as well as to continue to hide the property of Thomas H. West from the claims and judgments of creditors.

It is the well settled law of this state, and in most other jurisdictions, that a resulting trust can not arise or spring into being when the transactions on which the supposed trust is bottomed, appear to have had their origin in any fraudulent purpose. For instance, in an early case in this state where the principle just announced came under discussion, this court said: "The purpose really aimed at  *  *  *  in this case was probably to show a resulting trust in the grantor, and thereby defeat the action entirely. This is a privilege which strangers, whose interests are affected by the deed, are allowed, but, between parties and privies, such testimony is inadmissible. Parties and privies are not permitted to allege their own fraud as ground for varying or avoiding a deed. *Belden v. Seymour*, 8 Conn. R. 312.

"It will be readily observed, that the principle upon which this case turns can not be affected by the accidental circumstance, that the grantee is one of

the heirs of the grantor, and by means of the fraud gets advantage over his co-heirs, which neither the law of distribution nor the grantor's will designed. The grantor and his son, the grantee, were both participators in the fraud, and its object was to enable the grantor to defraud the government of the United States. The party defrauded has not complained, and is not attempting to set aside the deed. There is no pretense that the deed is otherwise than it was intended to be, but merely that the grantee is unwilling to comply with a secret understanding which existed between the parties, and which is totally inconsistent with the face of the deed. In such a case there is, manifestly, no hardship in holding the grantor to his deed, and if, as in this case, this hardship descends to his children or heirs, it results from a principle of law, too well settled and too necessary to be maintained in other cases, to authorize us to disturb it here.'' *Henderson v. Henderson's Ex'rs*, 13 Mo. 151.

In a still earlier case in this state, this court held: "A father having for a fraudulent purpose conveyed lands for the benefit of two of his children, his heirs can not in equity set aside such conveyance on the ground of fraud. No man is entitled to the aid of a court of equity when that aid becomes necessary by his own fault. The complainants coming in as heirs of their parents, being mere volunteers, can not claim any greater advantage than their ancestors.'' *Ober v. Howard*, 11 Mo. 425.

In *George v. Williamson*, 26 Mo. 190, a father in order to place his land beyond the reach of his creditors, conveyed it to his daughter. After his death his administrator, alleging that this conveyance was made to defraud creditors of their just demands, obtained an order of the county court to sell the same. When the land was sold the administrator bought it, and,

receiving a deed therefor, filed his bill against the daughter, alleging the facts aforesaid, and praying that the conveyance be set aside. On demurrer the bill was held insufficient, this court observing: "The conveyance of Williamson, however fraudulent against his creditors, was valid against him and his heirs. At his death the land constituted no part of his estate, nor could the administrator who represented his interests, undertake to set it aside."

This court said on the same subject, in *Miller v. Davis*, 50 Mo. 572: "It is a well settled principle of equity jurisprudence that, in general, where one person pays the purchase money for land, and the title is conveyed to another, a trust results in favor of the party who paid for the land. But where such purchase is made in fraud of an existing statute and in evasion of its express provisions, no trust can result in favor of the party who is guilty of the fraud." See, also, *Higgins v. Higgins*, 55 Mo. *loc cit.* 348; *Buren v. Buren*, 79 Mo. 538; *Larimore v. Taylor*, 88 Mo. 661, and cases cited.

A learned author states the general rule governing this subject very comprehensively by saying: "If a voluntary conveyance is made for some illegal or fraudulent purpose, whether it is a common law or a modern conveyance, no trust will result to the grantor; as, if the voluntary conveyance is made to hinder, delay and defeat creditors, or to give a man a colorable qualification to vote, or to sit in parliament, or to kill game, or to disqualify the grantor for an office, or to commit any other fraud; for the reason that the rules of law can not be used, controlled or avoided by parties with a fraudulent intent to do that indirectly which they can not do directly." 1 Perry on Trusts [4 Ed.], sec. 165.

And this case is not altered nor in manner affected

by the fact that the statute of limitations has run against judgments obtained against Thos. H. West in his lifetime. The existence of this statutory bar did not have, and could not have the effect of purging the original transactions of the fraud wherewith they were contaminated.

The relation of trustee and *cestui que trust*, must arise at time of the original transaction and be contemporaneous therewith, and can not be brought forth by subsequent and independent circumstances. *Kelly v. Johnston*, 28 Mo. 249. So that we might readily concede the presumption exists that the judgments have been paid, and still this concession would not remove the taint from the occurrences on which the beneficial plaintiff relies to establish a resulting trust.

In closing this opinion, it is well enough to advert, for a moment, to the singular claim made by plaintiff's counsel: "That no court of equity is bound to limit itself to any rules, however venerable, in the consideration of any case brought into its forum. The only question which a court of equity is bound to solve is the question as to what is right, and what should the parties do in good conscience." In reference to this, it may be said that a court of equity has no more right to steer its course by crude notions of what is right in a particular case, than has a court of law. 1 Pomeroy's Eq. Jur., sec. 47.

Holding these views, we affirm the decree of dismissal. All concur.