## WEITZEL et al. v. LEYSON et al.

Where the specifications of errors on appeal called attention to the insufficiency of evidence to support the findings, and also specified rulings on the trial claimed to be erroneous, but the appellants' brief did not call attention to the insufficiency of evidence or errors, the Supreme Court was only called on to consider whether the findings of fact support the relief granted by the judgment.

A finding of fact of the lower court is binding on the Supreme Court, in the absesnce of a specification of error relied on to justify it in disregarding the same.

A contract of sale of land, whereby parties "sold and agreed to convey" subject to approval of the owner of the land, and providing that, should he disapprove the sale, funds paid should be returned to the purchaser, and the parties selling released from liability, is an agreement for the sale of land to which the parties held no title, and not a contract for the sale thereof as agents for the owner; the effect of the provision for the approval of the owner being merely to protect them from liability should he refuse to convey the title to them.

If parties selling land to which they hold no title are unable to procure tile from the owner so that they cannot comply with their agreement to convey, they render themselves liable to suit on the contract.

Under a contract for the sale of land to which the parties hold no title, providing that the sale was made subject to approval of the owner, and that, should he disapprove thereof, the funds paid would be returned to the purchaser and the vendors released from liability, they could not refuse to convey merely because they could not get the land of the owners on terms the same as or similar to those on which they contracted to sell.

Evidence **held** not to justify a finding that the owners of land did not approve of a sale thereof made under a contract subject to their approval.

One may contract to sell land of which he is not the owner, and the contract is valid and binding providing the purchaser knows such fact.

Under a contract of sale of land to which the vendors held no title, they were required, by their covenant to convey by warranty deed, to procure title in themselves, as a tender of the deed of any other person would not comply with the contract unless the purchaser waived his right to a deed from them.

In a contract for the sale of land, title to which was understood to be in third parties, no time was fixed for the delivery of the deed nor for payment of $6,200 of the purchase price, excepting that such payment should be made on delivery of the deed; but the contract provided that the time should be considered as of the essence thereof, and further that, unless title could be made good within 90 days from the date when such payment became due, the agreement should be void and money paid refunded. **Held,** in view of Rev. Civ. Code, § 1266, allowing a reasonable time for performance of an act if no time is specified, vendors had a reasonable time to execute and tender a deed, during which time they could not be placed in default by a tender of the purchase money, and were also entitled to a reasonable time in which to procure title before delivery of the deed; but that, after reasonable time had elapsed, they were bound to be ready to convey, and, if for any reason their title was defective, they would have 90 days to perfect it, or otherwise refund money paid.

After the time allowed vendors to procure title to lands, which they sold with the understanding that the title was in third parties, the right of rescission would be the same as it would be immediately after a contract was entered into by vendors, who, without title, claimed to be the owners of the land, and under which the purchaser has an immediate right of rescission.

Where both parties to a contract of sale of land for a period of some two years failed to take any affirmative step to put the other in default, the contract will be considered as abandoned, and the purchaser entitled to recover what was paid thereon.

Where a tract of land is sold with the understanding that the title is in third persons, and 140 acres thereof is so situated as to be a material part thereof and essential to its convenience, so that its omission would materially affect the value of what remained, the purchaser, after waiting a reasonable time and finding that the owners had no title thereto, or at least no marketable title, was entitled to rescind.

A purchaser who surrendered possession two years before suing for rescission was not obliged to tender before suit the value of the use of the premises, which could have been counterclaimed against purchase money paid.

(Opinion filed, May 21, 1909.)

Appeal from Circuit Court, Hand County. Hon. LORING E. GAFFY, Judge.

Action by S. E. Weitzel, administrator of C. A. Sanford, deceased, and others, against E. J. Leyson and another, to recover on account of a sale of land by defendants to decedent. From a judgment for plaintiffs and from an order denying a new trial, defendants appeal. Affirmed.

*Bates & Parliman* and *Gamble, Tripp & Holman,* for appellants. *A. W. Wilmarth,* for respondents.

WHITING, J. This cause was tried before the court without a jury. The court made and filed its findings of facts and conclusions of law herein, and entered judgment in conformity with said conclusions. The cause comes before this court upon an appeal from such judgment and from an order denying a new trial herein.

Upon the trial of this cause the defendants, appellants in this court, asked the trial court to make findings and conclusions in their favor, which findings and conclusions were refused. The appellants specified as error both the making of certain findings as found by the court, the refusal to make findings as requested by them, the making of conclusions favorable to the respondents, and the refusing of those asked for favorable to the appellants. Appellants in their specifications of errors call attention particularly to the points wherein they claim the evidence is insufficient to support certain findings, and also specify certain rulings of the court upon the trial which they claim were erroneous; but in their brief they have not called attention to such insufficiency of evidence or errors, so that, under the record as it comes before us, we are only called upon to consider whether the findings of fact support the relief granted by the judgment. We would say, however, that, after careful reading of the abstract herein, we are satisfied that the evidence fully sustains all the findings of fact necessary to support the judgment.

It is difficult for us to determine from the complaint just the nature of action which the respondents sought to bring: Whether to rescind the contract and recover the money paid thereon, or to recover the money paid on a contract which respondents claimed to have been theretofore rescinded, or to recover money paid on a con-

tract that had been mutually abandoned, or, lastly, to recover money paid on a contract absolutely void and therefore without consideration. While we believe that the respondents might have recovered on any one of the first three grounds above stated, yet, for the purposes of this appeal, we shall treat the complaint as one seeking rescission of the contract and recovery of the money paid thereon; this, in our opinion, being the view of the complaint most unfavorable to the respondents. The appellants in their brief raise no question as to the insufficiency of the complaint, only calling attention to its uncertainty. We will herein also briefly consider the question of abandonment of contract.

The findings of the court, so far as we consider the same material, were, in substance, as follows:

May 23, 1903, C. A. Sanford and the appellants entered into a contract in words and figures as follows: "May 23, 1903. Received from C. A. Sanford, of Beresford, S. D., $1,000 in earnest money and as part payment for the purchase of the following described property situated in the county of Hand and state of South Dakota, viz., S. W. ¼ and S. ½ of N. W. ¼ and N. E. ¼ of N. W. ¼, section 27, S. ½ of N. ½ and S. ¼ of section 28, S. E. ¼ of N. E. ¼ and N. W. ¼ of S. E. ¼ and E. ½ of S. E. ¼, section 29, N. E. ¼ of N. E. ¼ of section 32, and W. ½ of E. ½, section 33, in all fourteen hundred and forty (1,440) acres, township one hundred and twelve (112) range seventy (70), which we have this day sold and agreed to convey to said C. A. Sanford for the sum of fourteen thousand two hundred dollars ($14,200) on terms as follows, viz.: One thousand dollars ($1,000) in hand paid as above and six thousand two hundred dollars ($6,200) on delivery of warranty deed. Balance as follows: $3,500 in 1906, $3,500 in 1908, with interest on deferred payments at 6 per cent. from date, payable annually—payable on or before the dates named above, or as soon thereafter as a warranty deed conveying a good title to said land is tendered, time being considered of the essence of this contract. And said sale made subject to the approval of the owner of said land. Should he disapprove of the sale, then, in that case, funds to be returned and Leyson Bros. released from any liability. And it is agreed that if the title to said premises is

not good and cannot be made good within ninety days from date when first deferred payment shall become due, this agreement shall be void, and the above earnest money refunded. But if the title to said premises is then good, in the name of the grantor, and said purchaser refuses to accept the same, said earnest money shall be forfeited to Leyson Bros. as liquidated damages. But it is agreed and understood by all parties to this agreement that said forfeiture shall in no way affect the right of either party to enforce the specific performance of this contract. Leyson Bros. We hereby agree to purchase the said property for the price and upon the terms above mentioned, and also agree to the conditions of forfeiture and all other conditions therein expressed. [Signed by both parties, man and wife.] C. A. Sanford. [Seal.] Agnes M. Sanford [Seal.]"

On July 11, 1903, said Sanford died leaving as heirs the parties who are plaintiffs and respondents herein, with exception of Weitzel, who was duly appointed administrator of the Sanford estate. Henry Popel and Frank Popel are the persons whom appellants claim they represented as agents in the making of the above-mentioned contract, and on June 10, 1903, the said Popels made and executed a warranty deed to C. A. Sanford, which deed described most of the land mentioned in said contract, omitting, however the S. E. ¼ of the N. E. ¼ of section 28, township 112, range 70, and including the following land not described in the contract: The N. W. ¼ of the N. W. ¼ of section 27, township 112, range 70. Appellants at no time have ever had any title to any of the property described in the contract above mentioned. The Popels never had any title to that 40 acres mentioned in the contract and omitted from the deed. Furthermore, they never, even up to the time of this suit, had any marketable title to the N. E. ¼ of the N. E. ¼ of section 32, the W. ½ of the N. W. ¼ of section 33 and the S. E. ¼ of N. W. ¼ of section 33; the title to this last land appearing on record in a person deceased, whose estate had never been probated, and who made no conveyance prior to her death. The Popels refused to accept the terms of payment as fixed by the contract between the appellants and respondents, and respondents never agreed to any other terms, and the Popels

have failed and refused to confirm said contract. (The foregoing sentence states one of the findings of the court, and as such is binding on this court, owing to there being no specification relied upon to justify our disregarding of the same. This finding is based solely upon the 'following letter written by the appellants to Sanford: "Ree Heights, S. D., June 5, 1903. Mr. C. A. Sanford, Beresford, S. D.—Dear Sir: I forwarded the abstracts to you today to examine which are all 'O. K., and there is one abstract back yet in one ¼ which will be ready in a few days. Papers are all here in the banks, ready for business on 1,440 acres. Parties want deal closed as soon as possible. I got the land by going after it hard. I didn't get terms as I thought I would be able to. Terms are as follows: 3 years 7,000, on place at 6 per cent.; 2,000 in 1 year; 2,500 in 2 years; 2,500 in 3 years. Couldn't do business so far on 280. Might yet. They will give five years with 9,000.00 on place if they could do business with the French. Get things in shape to do business as soon as possible. They won't allow this thing open but a very short time. You can bring your stock up any time. Take possession any day. So hurry matters soon as possible. With kindest regards to you all. Yours truly, E. D. Leyson.") May 23, 1903, Sanford paid appellants $1,000 in cash, which money has never been turned over to the Popels or repaid to respondents. Prior to the commencement of this action, demand was made for the return of the $1,000 and surrender and cancellation of the contract. No warranty deed conveying good title to this land or any part of it has been tendered, and respondents have elected to cancel and rescind the contract. After the making of the contract, respondents took possession of the land, holding the same some three months, abandoning such possession in the fall of 1903, when possession was resumed by the Popels, who have held possession ever since.

This action was not brought until some time in the year 1905. Upon the trial of this action, as well as in the briefs submitted on appeal, great stress seems to be laid by both parties on the question of the agency of appellants, their authority, if any, to enter into the contract, the rights of the Popels under such contract, and the question of ratification by the Popels. We think that a

careful study of the nature of this contract will remove much of the doubt and uncertainty regarding the rights of the parties hereto, which doubt and uncertainty seem to have troubled the parties and the court throughout the trial of this case. This contract is clearly one whereby the appellants covenanted, in consideration of certain payments to be made them, to convey certain lands of which they were not then the owners. In this contract the appellants did not purport to be acting and contracting as the agents of or for any other persons, namely, the owners of the land. There is not, in this case, any words sufficient to show an agreement or understanding on the part of the parties thereto that any third person or persons could have any interest in, or rights under, such contract. It will be noted that the appellants "sold and agreed to convey." It is not a contract providing that some person or persons unnamed, who are the owners of the land, have sold and will convey the same. In fact, it would not have occurred to any person to try and connect third persons with the covenants of this contract, if the contract had stricken therefrom the second paragraph. Without such paragraph it would be complete. The question arises then as to what is the object and effect of such paragraph: "And said sale made subject to the approval of the owner of said land. Should he disapprove of the sale, then in that case, funds to be returned and Leyson Bros. released from any liability."

These parties were selling land to which they held no title. If they are unable to procure the title from the owners, and thus are placed where they could not comply with their agreement to convey, they render themselves liable to suit on such contract. It is clearly to protect against this that they inserted this second paragraph, and its effect is to protect them and terminate the contract, providing the owners should refuse to convey the title to them. We think that, under this paragraph, the appellants could not refuse to convey merely because they could not get the land of the owners on the same or similar terms as those they contracted to sell on. Furthermore, we do not think the evidence justified the court finding that the owners did not approve of the sale. The evidence on this point is the letter above referred to. This letter shows that the supposed owners were willing to convey

the land, but that appellants would have to settle with them on terms different than appellants were giving Sanford. What this land should cost appellants, and the terms under which appellants might purchase the same, were absolutely immaterial to Sanford. Sanford had not covenanted to pay anything to the owners of the land, or made any agreement by which the deferred payments, even, were to run to such owners, either under note or mortgage. If the contract had provided that the deferred payments should be evidenced by notes running to said owners, there would be something upon which to base the contention that the owners were not only to consent to the sale by conveying their title to appellants, but also were to approve of the terms of the sale. If, however, this contract was subject to the construction apparently put upon it by the trial court, then it terminated when the owners insisted on other terms, as stated in the above-mentioned letter, and immediately, upon notice of such termination, the right of action to recover the $1,000 accrued. The findings, fully supported by the evidence, show that no other agreement was ever entered into.

Respondents insisted that the contract entered into was absolutely void, for the reason that appellants had no authority to enter into such contract. It is true that they had no authority, as agents, to enter into such contract; but it is well settled that a person may contract to sell land of which he is not the owner, and that such contract is in every respect valid and binding, providing the purchaser knows that his vendor is not the owner. 29 Am. & Eng. Ency. of Law (2d Ed.) 667; Rutland v. Brister, 53 Miss. 683. Under the contract entered into, the appellants covenanted to convey by warranty deed, thus requiring them to procure title in themselves, as a tender of the deed of any other person would not be a compliance with the contract, unless the purchaser had waived his right to deed from his vendor, and in case at bar there was no such waiver. 29 Am. & Eng. Ency. of Law, 610; George v. Conhim, 38 Minn. 338, 37 N. W. 791; Bigler v. Morgan, 77 N. Y. 312; Rudd v. Savelli, 44 Ark. 145; Steiner v. Zwickey, 41 Minn. 448, 43 N. W. 376. In the Arkansas case, speaking of a bond for deed, the court says: "Such a title bond entitles the vendee to a deed with the usual covenants—that means the covenant of the

vendor. A deed with the covenant of a stranger might be of small value." In the Minnesota case the vendor tendered a deed from the real owners, and the court says: "It is true that in Zwickey's contract there was no express provision that he should convey; but he sold the property and stipulated that the convey-ance should be a warranty deed. This imposed upon him the duty of making and delivering his own deed, not that of another person. * * * Under his contract Seiter was entitled to a deed containing the personal covenant of his vendor, and with a perfect title of record in him at the time of the delivery. He could re-fuse to accept the warranty of a third party, for the value of the covenants depended upon the responsibility of the covenantor. Upon Zwickey's refusal to execute and deliver the deed stipulated for, plaintiff's right to rescind matured."

It will be noticed that no time is fixed for the delivery of the deed, nor for payment of the $6,200, except that such payment should be made upon the delivery of the deed; but such contract provides that time should be considered as of the essence of the contract. There is the further agreement that, unless title can be made good within 90 days from the date the $6,200 payment be-comes due, the agreement should be void and the $1,000 refunded. If the contract had provided a date for the delivery of the deed, the time for default would be clear, and, time being of the essence of the contract, a right to rescind would accrue immediately upon such default. No time being specified for the delivery of the deed, the appellants had a reasonable time to execute and tender a deed, and during such time they could not be placed in default by a tender of the purchase money. Furthermore, inasmuch as it is clear that it was understood that the title was in the third par-ties, the appellants were entitled to a reasonable time within which to procure such title before delivering the deed. Section 1266, Rev. Civ. Code; Whiting v. Gray, 27 Fla. 482, 8 South. 726, 11 L. R. A. 526. But time being of the essence of the contract, after a reasonable time had elapsesd, the appellants were bound to be ready to convey by proper deed full title of the land. The only possible extension they would be entitled to would be that, upon tendering a proper deed, if for any reason their title was defective,

they would have 90 days to perfect the same, and, if then imperfect, the purchase money should be refunded.

Up to the time that appellants should procure title to such lands, neither Sanford nor his representatives could be in default, and during such time no tender could ever be required from Sanford or the respondents, in order to put the appellants in default, inasmuch as the appellants would be in such default as would entitle the respondents to bring this action, when they failed to procure the title within a reasonable time, or within 90 days after tender by them of warranty deed. After such time the right of rescission would be exactly the same as it would be immediately after a contract was entered into, in which contract the vendors claimed to be the owners of the land, when in fact they held no title, and under such a contract the vendee has an immediate right of rescission. Wilhelm v. Fimple, 31 Iowa 131, 7 Am. Rep. 117; Runkle v. Johnson, 30 Ill. 328; Gregory v. Christian, 42 Minn. 304, 44 N. W. 202; Burks v. Davies, 85 Cal. 110, 20 Am. St. Rep. 213; 24 Pac. 613; Getty & Peters, 82 Mich. 661; 46 N. W. 1036, 10 L. R. A. 466; 29 Am. & Eng. Ency. of Law §§ 621, 653, 666, 726, 727. The above cases are not all cases brought to rescind contracts, some of them being actions at law, but the propositions laid down therein support the above. In the case of Goetz v. Walters 34 Minn. 241, 25 N. W. 404, the vendee had made numerous payments when she discovered that the vendor had no title. She brought action to recover the money paid ,and three days after suit was brought the defendant acquired the title. The contention seemed to be as to whether, under the contract in that case, the title had to be good in the vendor when the contract was entered into, or whether it need only be good when conveyance was made, and the court held that it was immaterial which construction was placed on the contract; that when the vendor, at the time fixed by the contract for conveyance, was unable to convey, and the vendee should ascertain that he was unable to convey because he had no title, she could at once avoid the contract without going to the trouble to tender payment and call on the vendee to convey. In Wilhelm v. Fimple, the court, after stating that, where the vendor has done nothing to render himself incapable of performing the contract, the

purchaser cannot rescind without first tendering the unpaid pur-
chase money and demanding performance on the part of the ven-
dee, then says: "We have failed, however, to discover any author-
ity holding that such tender is necessary when the vendor, by his
own act or by the operation of law, has been rendered unable to
perform the contract upon his part." It appeared that the vendor
had never tendered performance, and the court stated: "The plain-
tiff has never been placed in default by such tender and refusal,
nor has she been rendered unable to perform her agreement. Her
right of action therefore still subsists, and she has a choice of rem-
edies. She may tender performance on her part, and in a court of
law, recover the damages sustained; or she may, after default
made by the vendor, elect to rescind the contract, and sue for a
recovery of the advancements made thereon. Having elected the
last course, is it essential, under the circumstances of this case, to
the maintaining of the plaintiff's action, that she should tender the
unpaid purchase money? The mortgage, which existed upon the
land at the time of the sale, was foreclosed, and the property pur-
chased by the mortgagee, prior to the institution of this suit. The
defendant, by failing to remove the mortgage incumbrance and
permitting the land to be sold thereunder, has placed it out of his
power to perform his part of the agreement. A tender therefore
upon the part of plaintiff, and a demand that defendant should do
a thing which he is powerless to perform, would be a vain act.
The law does not require the doing of a useless thing." Surely
the above case is no stronger than the case at bar. In that case
the vendor had title and allowed the same to be taken from him.
In this case the vendor had no title, but was bound within a rea-
sonable time to procure the same, and for some two years prior
to this suit had made no attempt to procure title, and, in fact,
makes no offer of title upon suit brought. In the case of Getty v.
Peters, it was held that where the vendor let the vendee into pos-
session when the vendor had no title to the land covered by the
contract, then, no matter whether the vendee has made his pay-
ments or not, the vendor cannot place the vendee in default, so as
to entitle him to oust the vendee from possession, until such time
as the vendor shall have acquired a title placing himself in a posi-
tion to perform on his part, and has tendered such performance.

In the case at bar, if the contract could be so construed as to give the appellants a right to tender a contract from the Popels to Sanford or the respondents, yet such a tender must have been made within a reasonable time, and respondents would have been bound to make the payment when the deed was tendered; or, if respondents attempted to place appellants in default, they would have had to tender payments and demand conveyance within a reasonable time. Both parties having failed to take any affirmative step to put the other in default, for a period of some two years, which period is not a reasonable time, the courts will consider the contract abandoned and respondents entitled to recover what was paid thereon. Cleary v. Folger, 84 Cal. 316, 24 Pac. 280, 18 Am. St. Rep. 187. In this action a time was fixed for the payment and delivery of deed, and, a few days after expiration of such time, the vendee gave notice of rescission of contract and demanded back money paid, which payment, under the terms of the contract, was mentioned therein as a forfeit. No tender of the balance was made by vendee, and neither was a deed tendered on the date it should have been delivered, or any demand made for balance due under the contract. The court says: "So far, then, as the further carrying out of the agreement was concerned, time being of the essence of the contract, each side had neglected to perform its part of the agreement necessary to consummate the contract, and it was at an end. The plaintiff could not be forced to pay the balance of the purchase money, as no deed had been tendered him or installment due demanded. The defendant was no longer obliged to make a deed to the premises conveying a good and sufficient title, as the balance of the purchase money was not tendered, so that the material question left to be determined is whether or not the plaintiff, upon this state of facts, is entitled to recover from the defendant, as money in his hands held for plaintiff's use, the $900 which he deposited with the defendant on the inception of the contract as 'a forfeit.'" The court then went on to say that the contract was at an end, that the forfeit money could be recovered, less such damages as defendant might show for failure of plaintiff to complete the purchase, and that such damages could be secured in an action brought by the vendee to recover the said payments. This case

clearly shows that an action at law would have lain under the facts
of the case at bar, and that under the findings herein the respond-
ents would be entitled to recover, regardless of the question of
rescission.

There is yet another feature of this case not to be overlooked.
The Popels did not own one 40 acres of the land described in the con-
tract, and did not have a marketable title to another 160 acres of
the land, and neither they nor appellants have ever secured title
to the 40 or perfected the title to the 160. It is quite possible
that the nonconveyance of the 40 acres would not release the vendee
in a contract involving such a large tract, where there is no showing
that this 40 acres had any special value so that compensation could
not be made therefor; but referring to the description of the 160
acres, held under title which was, at least, not marketable (which
the trial court found the Popels had no title to), it will be found
that it was so situated as to be a very material part of the tract pur-
chased and essential to its convenient use. The taking out of this
land would materially affect the value of what remained. There-
fore the respondent, after waiting a reasonable time and finding that
even the purported owners of the land in question had no title,
or at least no marketable title to a material part thereof, had the
undeniable right to rescind the contract.

The appellants contend that, inasmuch as Sanford took pos-
session of the premises, the respondents could not afterwards res-
cind the contract, at least not without tendering value of the use
of such premises while in their possession. They had surrendered
possession quite two years before this action was brought, and
therefore were not in the position of a party seeking to rescind
while in possession. If the appellants were entitled to anything
for the use of the premises, and we do not desire to intimate that
they were in view of the fact that title was not in them, they
could have counterclaimed for same against the $1,000 demanded,
and the respondents were not obliged to tender the same before
bringing a suit. 29 Am. & Eng. Ency. of Law, 614.

Certain other questions are raised upon appeal, mainly going
to the rulings of the court upon the admission and rejection of evi-
dence offered and received; but, inasmuch as the evidence in ques-

tion in no manner touched upon the issues material to the questions herein discussed, it becomes unnecessary to consider such assignments of error.

It being therefore clear that whether you consider this action as one brought at law on the theory that the contract had been abandoned or rescinded, or whether you consider the action one seeking the rescission of the contract, the respondents, in either case, are entitled to recover the $1,000; and, if considered as an action to rescind a contract still in existence, they are entitled to cancellation of such contract.

Judgment of the lower court and order denying a new trial are therefore affirmed.