[Civil No. 2193.   Filed March 4, 1925.]

[233 Pac. 895.]

## F. W. BROWN and MARTHA BROWN, His Wife, Appellants, v. CHARLES A. PETERSON, Appellee.

1. TRIAL—WRITTEN OPINION OF TRIAL COURT CANNOT BE TREATED AS FINDINGS OF FACT UNDER STATUTES.—Written opinion of trial court cannot be treated as findings of fact provided by the statutes.

2. APPEAL AND ERROR—TRIAL COURT PRESUMED TO HAVE FOUND FACTS TO SUPPORT JUDGMENT, AND THAT CORRECTLY, IF THERE IS ANY EVIDENCE TO SUPPORT SUCH FINDINGS.—In absence of findings of fact by trial court, Supreme Court must assume that trial court found every fact necessary to support judgment, and that correctly, if there was any reasonable evidence to sustain such findings.

3. TRUSTS—WHERE LEGAL TITLE TO PARENT'S PROPERTY PLACED IN CHILD TO EVADE LAWS OF UNITED STATES, NO TRUST RESULTS.—Where parent, to evade laws of United States, has placed legal title to property in name of his daughter, no trust results in favor of parent, and equity will not assist him in establishing any right, legal or equitable, to such property when true facts are shown.

4. VENDOR AND PURCHASER—CONTRACTS TO SELL THE LAND OF ANOTHER ARE NOT IN THEMSELVES INVALID.—Contracts to sell land of another are not in themselves invalid.

5. CONTRACTS—BOND CONDITIONED ON PARENT'S OBTAINING APPOINTMENT OF GUARDIAN FOR CHILD, AND COURT'S CONSENT TO CARRYING OUT OF CONTRACT FOR SALE OF CHILD'S PROPERTY, HELD VOID AS AGAINST PUBLIC POLICY.—Bond given by parent seeking to sell property to which child held legal title, given to purchaser and conditioned that parent would obtain appointment of

guardian and secure court's consent to carrying out of such contract, *held* void as against public policy, and insufficient to sustain a recovery by purchaser.

6. CONTRACTS—MONEY PAID TO PARENT OF MINOR, UNDER VOID CONTRACT FOR PURCHASE OF MINOR'S PROPERTY, HELD NOT RECOVERABLE AS FOR MONEY HAD AND RECEIVED, NOR UNDER DOCTRINE OF LOCUS POENITENTIAE.—Money paid by intended purchaser of realty, legal title to which was held by minor, to father of such minor, pursuant to a contract void as against public policy, *held* not recoverable as for money had and received, nor under doctrine of *locus poenitentiae*, where void agreement was carried out to point of procuring appointment of guardian and court's consent to sale by guardian.

7. CONTRACTS—MONEY PAID UNDER PARTIALLY PERFORMED ILLEGAL CONTRACT CANNOT BE RECOVERED AS FOR MONEY HAD AND RECEIVED, UNDER DOCTRINE OF LOCUS POENITENTIAE.—Money paid under illegal agreement may not be recovered as for money had and received, under doctrine of *locus poenitentiae*, where there has been a part performance of such illegal contract.

See (1) 38 Cyc., p. 1961.   (2) 4 C. J., p. 778.   (3) 39 Cyc., p. 135.
(4) 39 Cyc., p. 1529.   (5) 13 C. J., p. 413.   (6) 13 C. J., p. 496.
(7) 13 C. J., p. 496.

APPEAL from a judgment of the Superior Court of the County of Maricopa. J. S. Jenckes, Judge. Affirmed.

Messrs. Dougherty & Dougherty and Mr. G. W. Rogers, for Appellants.

Messrs. Allen & Alldredge and Mr. John L. Gust, for Appellee.

LOCKWOOD, J.—During December, 1919, John Cummard, a real estate agent in Mesa, had listed with him for sale a certain 40-acre tract located near that city, and approached one F. W. Brown, hereinafter called plaintiff, in an effort to sell him the property. A contract of sale between plaintiff and Charles A. Peterson, hereinafter called defend-

7. See 2 R. C. L. 789.

ant, was executed, by which defendant agreed to sell the aforesaid land to plaintiff for $15,200, $3,000 cash, and the balance over a period of eight years as set forth in the contract. The contract was dated January 2, 1920, but plaintiff did not sign it until February 16th. Before the 16th of February, plaintiff was informed the legal title to the land was in the minor child of defendant, Cecelia Peterson, and, at the suggestion of plaintiff's attorney, a bond was prepared by the latter and executed by defendant, the vital portion of which reads as follows:

"The condition of the above obligation is such that whereas, on the 2d day of January, 1920, we executed an agreement for the sale of real estate to the south half of the south half of the northeast quarter of section 9, township 1 south of range 5 east of the Gila and Salt river base and meridian, and located in Maricopa county, Arizona, to F. W. Brown, of Mesa, Maricopa county, Arizona. The title to these said premises is now in Cecelia L. Peterson, our minor daughter, and we hereby covenant and agree that on or before the 1st day of August, 1920, we will have a guardian duly and legally appointed to obtain the permission of some court of proper probate jurisdiction to appoint some competent person as guardian of the said Cecelia L. Peterson, and to secure the consent of the said court to carry out the said contract between us and the said F. W. Brown. If we do carry out these covenants, so obtaining the consent of a probate court, then shall this obligation be void; otherwise in full force and effect."

Plaintiff took possession of the premises in February, 1920. In the spring of 1920, defendant was appointed guardian of the minor, Cecelia Peterson, in California, the place of her residence, and duly qualified as such. On November 22, 1920, the time for such application having been extended by mutual consent, he applied for letters of guardianship in Maricopa county, which were refused him on the ground that he was a resident of California. In De-

cember, 1920, at the request of defendant, Leo All-dredge filed a petition in Maricopa county for such letters, which were granted in the same month, and he filed an inventory and appraisement, setting forth the land in question, as being the property of the minor.

On September 8, 1921, defendant, through his at-torney, Elijah Allen, who was a partner of Alldredge, filed suit against the latter as guardian, alleging sub-stantially that the minor held the lands in trust for the defendant. Alldredge answered with a general denial upon the same day, and a decree was rendered, signed and filed immediately, attempting to divest the title from the minor, and to place it in the hands of the defendant. Pursuant to the decree a guardian's deed was also made in favor of defendant.

In the meantime, on December 30, 1920, defendant had extended the time of payment for the land at plaintiff's request, making a new contract therefor on substantially the same terms as the original. No payments had been made on the original contract, except the $3,000 cash, but at the time of making the new contract a small amount of deferred interest was paid by plaintiff.

During the spring of 1922 plaintiff abandoned the premises and the contract, no more payments having been made thereunder. Thereafter plaintiff filed suit against defendant to recover the money paid by him, setting up three causes of action; first, for money had and received; second, for damages for fraudulent misrepresentation; and, third, for recovery on the bond. The case was tried on December 20, 1922, before the court without a jury, and on December 27th the court filed a written opinion, and rendered judgment for defendant, upon the ground, as stated in the opinion, that the contract was against public policy, and, as the parties were *in pari delicto,* plain-

tiff could not recover. Motion for new trial was made and denied in the usual manner, and an appeal from the order and the judgment followed.

The written opinion of the trial court, while interesting and instructive, as showing the theory upon which the court proceeded, does not, as stated by us in *Deatsch et al.* v. *Fairfield et al., ante,* p. 387, 233 Pac. 887, supply the place of the findings of fact provided by the statutes. We are therefore in the condition, in which we have in the past so often found ourselves, of being obliged to assume the court found every fact necessary to support the judgment, and, if there is any reasonable evidence to sustain such findings, that it did so correctly. *Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587.

It is plain, therefore, that the issues presented to us are almost entirely matters of law, the vital questions being, first, whether or not the contract and bond referred to are void as against public policy; and second, if so, are the parties *in pari delicto.* The evidence shows beyond doubt that, in 1917, defendant, with intent to evade the laws of the United States, caused the legal title to the land to be placed in his daughter, Cecelia Peterson. There can be no question that, under such circumstances, there is no resulting trust in favor of defendant, but that the legal title being in the child through the voluntary act of the parent, with the purpose on the part of the latter by so placing it to evade the law, a court of equity will not assist him in establishing any right, either legal or equitable, to such land when the true facts are brought before it. *Sell* v. *West,* 125 Mo. 621, 46 Am. St. Rep. 508, 28 S. W. 969; *Detwiler* v. *Detwiler,* 30 Neb. 338, 46 N. W. 624; 1 Perry on Trusts (4th ed.), par. 163.

Plaintiff, however, had nothing to do with this transaction, but we must assume the trial court found he

knew the legal title was in the minor's name at the time of the execution of the contract and of the bond. Knowing this, he entered into the agreement to purchase and took a bond, the condition of which was that a guardian should be appointed, and, necessarily acting through such guardian, the probate court should be induced to carry out the contract.

Was such a contract void as against public policy? It is urged that, while a guardian may not legally agree to sell the property of his ward without first obtaining the consent of the proper court, and that a contract so to do is void, yet, since defendant was not at the time of the contract guardian of the minor, he falls into the ordinary category of one who contracts to sell land of another, and that such contracts are valid. *Weitzel* v. *Leyson,* 23 S. D. 367, 121 N. W. 868; *Karns* v. *Olney,* 80 Cal. 90, 13 Am. St. Rep. 101, 22 Pac. 57.

Had the dealings between plaintiff and defendant been confined to the original contract, and had defendant then gone before the probate court, making full disclosure of all the facts, asking to have the property of the minor sold as provided by law, and taking his chances of being able to purchase the property and then to fulfill his contract with plaintiff, there would be some force in the argument, but the contract sued on in this case is the bond, and therein defendant agrees to secure appointment of a guardian, and in some manner get the consent of the probate court to the specific contract of sale already made. Such an agreement, if made by a guardian already appointed, would certainly be contrary to public policy and void. *Myers* v. *Hodges,* 2 Watts (Pa.), 381, 27 Am. Dec. 319; *Norton* v. *Fleming,* 145 Ga. 475, 89 S. E. 573; *Miles* v. *Diven,* 6 Watts (Pa.), 150.

Nor do we see where the plaintiff is helped by the mere fact that defendant was not at the time of the contract the guardian himself, when the parties had agreed in advance to have another commit a fraud against the estate of the minor child for the benefit of both of them. The bond is undoubtedly void as against public policy, and no recovery could be had thereon.

The second cause of action alleging fraudulent misrepresentation was dismissed by the court, and we must assume that it found there was no such misrepresentation. This brings us to the sole remaining cause of action—for money had and received.

Had this been the ordinary contract by A. for the sale to B. of land standing in C.'s name, and had A. been unable or unwilling to perform, doubtless B. could either rescind and recover the money paid, or affirm and sue for damages for the breach. *Alvarez* v. *Brannan,* 7 Cal. 503, 68 Am. Dec. 274; *Marcus* v. *Clark,* 185 Mass. 409, 70 N. E. 433.

We must assume, however, and there is ample evidence to support it, the trial court found that before the money was paid by plaintiff, he had full knowledge of the condition of the title, and paid it over in furtherance of an illegal purpose, relying upon the penalty of a void bond. The letters of plaintiff's attorney, dated January 14th and January 28th, 1920, and both written before the money was paid over, showed clearly that plaintiff knew the property belonged to the minor, not merely as a naked trustee but beneficially, and that defendant must account for the proceeds of any sale. He suggests therein that defendant "just select some friend of yours who will be reasonable in handling this matter," and then they can get the court to approve the transaction, stating that "Dr. Brown is ready to pay the money on this purchase," and when the bond prepared by

plaintiff's attorney is executed, "Dr. Brown will then turn the money over."

It would be hard to find a clearer case of two parties conspiring together to carry out a contract prohibited by public policy. The one thing that can be said in extenuation of defendant's attempted fraud on the government, as shown by his own admissions herein, is that "I was not the only one," and we may charitably presume he did not realize the legal effect of his act on the title to the land, and so really believed at first he had the right to deal with his child's property as his own. This belief, however, must have been dissipated by the letters from plaintiff's attorney, and from that time on both parties were engaged in the attempt to do, in some manner, and under color of law, what they were bound to know was forbidden by that law, viz., to make a valid sale of the lands of Cecelia Peterson under the terms of the contract. The final effort to divest the helpless minor of her rights by a pretended judgment, which no court would have rendered with knowledge of the real facts, was but a culmination of the conspiracy, and we cannot say a trial court was not justified in finding the parties were *in pari delicto*.

But, it is said by plaintiff, there is a *locus poenitentiae*, and therefore he may recover as for money had and received, notwithstanding the illegality of the agreement. Such is true only when there has been no part performance of the illegal contract. *Shattuck* v. *Watson*, 53 Ark. 147, 7 L. R. A. 551, 13 S. W. 516; *Sauerherring* v. *Rueping*, 137 Wis. 407, 119 N. W. 184; *Ullman* v. *St. Louis Fair Assn.*, 167 Mo. 273, 56 L. R. A. 606, 66 S. W. 949.

Was there a partial performance? The gist of the illegal agreement was that a guardian should be appointed to secure the performance of the contract of sale. How that was to be secured was left to the

defendant. The guardian was, after two efforts, appointed, and by means of suppression of the facts, or direct misrepresentations thereof, the pretended decree of court was secured, which on its face placed defendant in a position to carry out his contract. We feel that the agreement was executed to an extent which removed the *locus poenitentiae.*

It appearing that the trial court was justified in making findings of fact which as a matter of law sustained the judgment, the latter is hereby affirmed.

McALISTER, C. J., and ROSS, J., concur.