W. F. PARKER, RECEIVER, APPELLEE, V. FIRST NATIONAL BANK OF OMAHA, APPELLANT.

FILED FEBRUARY 21, 1929. No. 26506.

*Congdon, Finlayson & Burke,* for appellant.

*Swarr, May & Royce, contra.*

Heard before GOSS, C. J., GOOD, THOMPSON, EBERLY and DAY, JJ., and LOVEL S. HASTINGS and REDICK, District Judges.

GOOD, J.

This is an action to compel the defendant to account for trust funds and property. Defendant denied possession of any trust funds or property and, as a further defense, pleaded the statute of limitations. The guaranty fund commission intervened and asserted a right to the trust property by assignment from the plaintiff, but joined with

plaintiff and averred that a judgment or decree for plaintiff would inure to the benefit of the intervener. A trial of the issues resulted in a decree for the plaintiff. Defendant appeals.

In April, 1921, the Brown County Bank of Long Pine, then a going concern, was indebted to the defendant in a sum slightly in excess of $40,000 upon three promissory notes, and, to secure the payment of such notes, the Brown County Bank deposited with defendant, as collateral, notes of its customers aggregating in amount nearly $100,000. The Brown County Bank became insolvent, and Parker, the plaintiff, was appointed and qualified as its receiver. A large part of the indebtedness of the Brown County Bank was soon paid by collection of collaterals pledged as security. In September, 1921, the receiver offered to pay defendant the amount still due on the three promissory notes and demanded return of the uncollected collateral then in the possession of defendant. Defendant refused to comply with the request and, under a clause of the agreement pledging the collateral, to the effect that after the payment of the three promissory notes the collateral might be held and applied to any other liability of the Brown County Bank which the defendant might then hold, asserted a right to hold the collateral and the proceeds as security for the payment of other notes. The receiver denied that the other notes were liabilities of the Brown County Bank and, without tendering the amount due upon the notes of the Brown County Bank, brought an action in replevin. No order of replevin was issued, but defendant appeared and filed a demurrer to the petition in that action. In July, 1922, after the filing of the replevin action, the balance due the defendant upon the three notes of the Brown County Bank was paid in full from collections out of the collateral. In September, 1922, an agreement was entered into between plaintiff, and defendant that the remaining collateral notes, then in the possession of defendant, should be turned over to the receiver, and that he should make collections on said collateral notes and turn the proceeds of such collections

over to defendant, to be held by it until it should be determined in the then pending replevin action to whom the collateral and the funds derived from the collection thereof should belong. In December, 1922, there was a supplemental agreement entered into between the parties that, if the proceeds from the collateral notes should be found to be the property of the receiver, the defendant would pay interest thereon at the rate of 4 per cent. per annum. The receiver made collections on the collateral notes and, pursuant to the agreement made in September, remitted the proceeds of such collections to the defendant. The collections so received and remitted between September, 1922, and February 17, 1924, aggregated $17,942.19. As defendant received each remittance, it issued for the amount a cashier's check and placed it in a separate file. In 1924 the replevin action, which had been begun in the district court for Douglas county, was, on the court's own motion, dismissed, without prejudice, for want of prosecution. In June, 1926, the said sum of $17,942.19, which had been collected from the collaterals and remitted by plaintiff to defendant and by it kept in the form of cashier's checks, was, without notice to the receiver, applied to the payment of five notes held by defendant. Duffy, Kernan, and Palmer, respectively, were the makers of three of these notes and Bucklin and Wilson were the payees therein named. The payees indorsed these notes and sent them to the defendant, requesting that it discount them and place the proceeds to the credit of the Brown County Bank. W. A. Bucklin and Howard O. Wilson, respectively, were the makers of the other two notes. In each of these two notes defendant was named as payee. The makers of these two notes sent them to defendant, requesting it to carry them and place the proceeds to the credit of the Brown County Bank. Defendant complied with each request and placed to the credit of the Brown County Bank the proceeds of the five notes. There was no attempt to attach to any of them the indorsement or guaranty of the Brown County Bank. At the time Bucklin and Wilson were, respectively,

president and cashier of the Brown County Bank, and defendant kept these last named notes in a file of Brown County Bank items listed as such, but the record discloses no agreement, or guaranty, on the part of the Brown County Bank, to indorse or otherwise become liable thereon. No fraud, accident or mistake is shown in connection with the execution, indorsement and delivery of said notes, or any of them. In each instance the proceeds of these notes were credited to the account of the Brown County Bank and by it withdrawn.

This statement of fact is substantially taken from the findings made by the district court, and the findings are supported by the record. The trial court determined that the Brown County Bank was not liable on or for the last five notes and that defendant was not authorized to apply the collections from the collateral to the payment of said notes. The court further determined that the agreement made in September, 1922, for the collection of collateral and holding of the proceeds until the liability of the Brown County Bank on these five notes could be determined, and the supplemental agreement, made in December of the same year for the payment of interest on funds arising from the collateral, were a distinct recognition of the obligations of defendant to account for the collateral; that the dismissal of the replevin action without prejudice gave rise to a right of plaintiff to bring this or some other action to secure the determination of the rights between the parties, and against which right the statute of limitations would begin to run only when notice of repudiation of such obligation on defendant's part should be given the receiver, or the fact of such repudiation otherwise brought to his knowledge, and that the plea of the statue of limitations was unavailing. It further appears from the record that, in addition to the $17,942.19, which had been collected from the collateral by the plaintiff and remitted to the defendant, plaintiff had collected the further sum of $1,271.75, which remained in his possession, and that he still held in his possession the remaining uncollected collateral notes. The trial court

awarded the plaintiff judgment for $17,942.19, with interest at the rate of 4 per cent. to the date of the entry of judgment, and also held that plaintiff was entitled to retain the $1,271.75 and the balance of the uncollected collateral, which was then in his possession.

Counsel for defendant allege that the trial court erred in its ruling that defendant was not entitled to hold and apply the proceeds arising from the collection of the collateral notes to the payment of the five notes, to which reference has hereinfore been made.

Defendant contends that where one bank deposits money to the credit of another bank, and the latter receives and retains the benefits, even if the transaction is in the nature of an excess loan, a liability arises on an implied contract to return or make compensation for the benefits received, and, further, that, although in the ordinary case a bank whose name does not appear on a promissory note may not be sued thereon, yet if the bank receives and retains the benefits of the transaction it may be estopped to deny its liability and required to account for the benefits which it receives.

For the sake of argument, the proposition may be admitted as sound; but in the instant case there is nothing to show that the Brown County Bank received and retained the benefits of the deposits to its credit. For aught that appears, the persons who sent the notes to defendant for discount may have drawn and received from the Brown County Bank the amounts placed to its credit; nor is there anything in the record to disclose that the transactions were, in any sense, those of the Brown County Bank. Nowhere does it appear that any of the five notes were at any time the property of the Brown County Bank, nor that it assumed or incurred any liability to defendant for any of the five notes for which defendant claims to hold the collateral as security.

Defendant also advances the proposition that if, for the purpose of enabling a bank to borrow money without giving its own note, another bank credits the sum to the borrower's account and takes an individual guaranty from the

borrower's officers or directors, amounts drawn on the credit constitute a loan to the bank and not to its officers or directors, and cites in support of this proposition *American Exchange Nat. Bank v. First Nat. Bank,* 82 Fed. 961. The facts in the instant case, however, do not bring it within the rule announced. The record does not disclose that the discounting of the five notes was for the purpose of enabling the Brown County Bank to borrow money without giving its own note.

In *Norfolk Nat. Bank v. First Nat. Bank,* 114 Neb. 560, it was held: "One whose name nowhere appears on a negotiable promissory note is not generally chargeable as indorser." The same rule would apply to a contract of guaranty, unless a separate contract of guaranty was shown to exist. No liability of the Brown County Bank, as maker, indorser, guarantor, or otherwise, on any of these notes is shown. It necessarily follows that the defendant could not lawfully hold the collateral notes, or the proceeds thereof, for the payment of any of the five notes in question.

It is argued that plaintiff's cause of action is barred by the statute of limitations. It is insisted that a cause of action arose in favor of plaintiff at the time he offered to pay the balance due upon the three promissory notes, for the security of which the collaterals were pledged, and that at any rate it began to run from the time the action in replevin was instituted.

It is a well-recognized rule that the statute of limitations will not run against a cause of action until the party asserting it has the right to bring and maintain such action. It is also a well-recognized rule that the pledgor of collateral securities may not institute and maintain an action for the recovery of the pledged collateral until he has first paid the debt for which they were pledged as security, or until he has made a lawful tender of the amount of such debt. In the event of tender, he must keep the tender good, and, when bringing his action, he must bring or tender the amount into court. Jones, Collateral Securities (3d ed.) sec. 570. .

The record in this case discloses that at the time plaintiff offered to pay defendant the balance due and demanded possession of the collateral no tender of any amount was made; that there was still a balance due upon the principal notes for which the collaterals were pledged, and it also appears that at the time the action in replevin was brought there was still a balance due, and in that action it is not disclosed that any tender was kept good by bringing the same into court. The defendant had a lawful right to retain possession of all the collaterals until the full debt for which they were pledged had been discharged. It appears that the debt was not fully discharged until July, 1922, and was then paid by the defendant's collection of the collaterals and applying the proceeds to the payment. There are authorities which hold that, when the pledgor has fully paid and discharged the obligation for which collaterals have been pledged, a cause of action for the return of the collaterals then arises in his favor, and the statute of limitations will begin to run from that time. There are other authorities holding that the statute of limitations will not begin to run against an action for the recovery by the pledgor of collaterals until the obligation for which they have been pledged has been fully paid and discharged and a demand made by the pledgor for the return of the collaterals and a refusal by the pledgee, or until it is brought to the knowledge of the pledgor that the pledgee has converted the collaterals to his own use and has repudiated the trust.

In view of the facts disclosed, it is unnecessary to determine which of these conflicting views is the better. After the replevin action was begun, the parties entered into an agreement, the effect of which was that the defendant should continue to hold and control the collaterals until the question whether the collaterals were holden for other obligations than the three original notes for which they were pledged should be determined in an action in court. It is true that both parties at that time no doubt contemplated that that question would be determined in the then

pending replevin action. It certainly was not the intention of the parties that another action might not be instituted for that purpose, if for any reason the rights of the parties were not determined in that action. To so assume would be to impute a want of integrity to the officials of the defendant bank. We assume that they were acting honestly and with good motives and desired that the rights of the respective parties as to the collateral, or, rather, as to whether the collateral was holden for the notes discounted by Bucklin and Wilson, who were officers of the Brown County Bank, should be determined by an action in court. With this in view, the new agreement was made, and under this new arrangement the defendant was then holding the collaterals in trust, with the understanding that they, or their proceeds, should, when the rights of the parties were determined, be surrendered or turned over to the ones determined to be lawfully entitled thereto. The defendant recognized the trust as continuing, and in December, 1922, entered into a supplemental agreement, providing for the payment of interest, under certain contingencies, upon the proceeds of collected collaterals. This was still a recognition of the trust. Thereafter nothing is disclosed to indicate a repudiation of the trust until the application of the proceeds of the collaterals collected to the payment of the five notes discounted by Bucklin and Wilson. This did not occur until June, 1926.

In *Holmes v. Doll*, 101 Neb. 156, this court held: "The statute of limitations does not commence to run against an action by the administrator of the estate of a beneficiary, to recover from the trustee the value of notes and mortgages which 'he has refused to transfer to plaintiff, until the trustee has repudiated his trust and refused to transfer the property." In *Hanson v. Hanson*, 78 Neb. 584, it was held that the statute "does not begin to run in favor of the trustee of a resulting trust until such trustee, by some act or declaration, clearly repudiates his trust." And this ruling was affirmed in *Johnson v. Petersen*, 100 Neb. 255.

Applying the principles of the foregoing authorities to the facts in the instant case, we deduce the following rule: Where a pledgor of collaterals has discharged the debt for which they were pledged, but the pledgee asserts a right to hold the collaterals for other debts for which pledgor denies liability, and the pledgor and pledgee enter into an agreement that pledgee should hold the collaterals pending a determination of such liability by proceedings in court, the statute of limitations will not run against an action by pledgor to recover the collaterals, or their proceeds, until such liability has been determined, or until the pledgee repudiates the trust.

It necessarily follows that the defense of the statute of limitations is not available to defendant. No error has been disclosed.

JUDGMENT AFFIRMED.

Note—See Pledges, 43 A. L. R. 1069; 21 R. C. L. 653; 4 R. C. L. Supp. 1425; 5 R. C. L. Supp. 1167; 6 R. C. L. Supp. 1278; 7 R. C. L. Supp. 715.